## I. J. Thompson v. The State.

*No. 3743.　Decided November 21.*

1. **Murder — Practice — Duty of State to Put Eye-Witnesses on Stand — Expert Evidence.**—On a trial for murder, where the testimony disclosed that there were four eye-witnesses to the murder, none of whom were called as witnesses by the State, though present in the court room, the prosecution was allowed to prove by two physicians, who had examined the scene of the homicide, their opinion as to the relative position of the parties at the time of the shooting. And where the other testimony in behalf of the State was entirely circumstantial, and defendant as a witness in his own behalf had testified that he did the shooting in self-defense, *held*, that the court erred, after the testimony above stated had been adduced, in refusing, when asked by the defendant, to require the prosecution to put the eye-witnesses upon the stand to testify.

2. **Evidence—Best Evidence.**—An elementary rule as to evidence is that which requires the best evidence of which the case in its nature is susceptible, and excludes that evidence which in itself indicates the existence of more original sources of information.

3. **Presumptive Evidence.**—Presumptive evidence ought never to be relied on where direct testimony is willfully withheld.

4. **Presumption of Innocence—Burden of Proof.**—In a criminal case a defendant is always presumed to be innocent, and the State can not throw upon him the burden of proving his innocence by calling witnesses essential to the prosecution.

APPEAL from the District Court of Bell.    Tried below before Hon. W. A. Blackburn.

This is a second appeal in this case.    The former appeal was from a judgment of conviction for murder in the second degree, the penalty being assessed at seven years confinement in the penitentiary.    Thompson v. The State, 29 Texas Court of Appeals, 208.    This appeal presents a conviction for murder in the second degree, with the punishment assessed at twenty years in the penitentiary.    The opinion sufficiently states the facts necessary to an understanding of the points decided.

*James Boyd*, for appellant.

*R. H. Harrison*, Assistant Attorney-General, for the State, submitted a brief, in which he concludes as follows: "The only meritorious question presented in the record is the sufficiency of the evidence to show the defendant guilty of any offense, and upon this point the State submits the case upon the record."

WHITE, PRESIDING JUDGE.—This is the second appeal in this case to this court.  The first appeal will be found reported in 29 Texas Court of Appeals, 208.    In that case appellant was convicted of murder in the second degree, his punishment being assessed at seven years in the penitentiary.    The judgment from which this appeal now before us is being prosecuted was a conviction of murder in the second degree, the penalty being assessed at twenty years in the penitentiary.

We deem it only necessary to discuss one question presented by the bill of exceptions and in the assignment of errors as shown in the record.    As necessary to an understanding of this question, we would state that the defendant's theory was that the killing was in self-defense, and under reasonable apprehensions of death or serious bodily injury.

The record shows that at the time of the homicide there were present at the house a Mrs. Dobbs and her daughter and a Mrs. Whitaker and her son, and that these four parties were eye-witnesses to the killing.    Defendant testified in person at this trial, and after detailing a previous difficulty the night before, which caused him to leave the deceased's house, and his coming back the next day in order to get his clothes and have a settlement with him, and get his pay for the work which he had done for deceased, he says he went up to the gate in front of the house and stopped, and set his gun down on the left-hand side of the gate, going in.    That deceased came out on the gallery, and asked him to come in.    That he told deceased, "No;" that he had come for his clothes and to have a settlement for his work.    Deceased said he had no settlement to make, and, cursing defendant,

told him that he had meddled with his business last night. "He asked how much he owed me, and I said, 'Three dollars;' and he said, 'G—d damn you, did I not hire you by the month?' I said, 'Yes,' and asked him if I had not done him good work. He said, 'Yes,' I then asked him if he wanted me to work on, and he said, 'Just as you damn please.' He said, 'I don't want to beg a man to work for me, and pay him, too.' He said that he would not pay me a damn cent, but that I could come in and get my clothes. I then started into the yard, leaving my gun where it was, standing outside the gate, when he left the gallery and started to meet me. He said he would cut my damn son of a bitch of a throat as soon as he would a damn dog. I told him not to come any nearer, as I didn't want to hurt him. I got outside the gate and picked up my gun, and he said, 'You need not think I am not coming.' He then put his hand in his pocket. I then stepped back and brought my gun to my shoulder, and told him if he came any nearer I would hurt him. I then stepped back two or three steps and said, 'G—d damn you, if you come any nearer I will shoot you.' He then pulled the gate open with his left hand (it opened to his right —that is, from left to right), and he started through the gate, when I shot him in the face. Mrs. Whitaker and Mrs. Dobbs, who are here in court as witnesses, began screaming and running around, and I went into the house and tried to pacify them," etc.

The theory of the State was that the deceased had come out to the fence, was leaning upon the fence and talking to the defendant, when the defendant shot him at close range; and that he made no demonstrations whatever calculated to create serious apprehensions of harm toward defendant. These were the two theories in the case.

In addition to the defendant's own testimony to his defense, Mrs. McClarey, a witness for the State, who lived 250 yards from the place where the homicide occurred, said: "I heard a gun and heard some one calling, and I ran in the direction of Mr. Hall's house, and I saw the defendant and Mrs. Dobbs in the road after I heard the gun. The defendant told me he had shot Mr. Hall. I asked him why he had done so, and he said, 'I had to do it in self-defense.'"

The State, in order to prove its theory, introduced two physicians, who were called in to attend the wounded man, and they, while there, went out and examined the locality of the shooting, and in substance testified, that from the relative position of the two parties as pointed out to them by the witness who saw it, and from the appearance of the wound in the side of the deceased, the relative height of the two parties, and the shots which they saw in a post by the side of the house, and a cistern eighteen inches high, it was impossible that the deceased could have been standing erect when shot, he being much taller than defendant, but that he must have been leaning over forward. This testimony was not objected to by defendant's counsel. Had it been objected to, under

the great weight of authority it was of doubtful admissibility, and perhaps should and would have been excluded. It is not competent for a witness to state his opinion as to the relative position of the parties to a homicide, either from the appearances of the wounds or other physical facts. Where the jury are as competent as any other persons to deduce conclusions from a given state of facts, the opinion even of scientific witnesses is not admissible in evidence, as it is a conclusion or inference to be drawn from them. Cooper v. The State, 23 Texas, 331, and authorities there cited. See, also, a very clear and elaborate discussion of this question in The State v. Jones, reported in full in 8 Criminal Law Magazine, 148, citing Dillard v. The State, 58 Miss., 368; Cook v. The State, 4 Zab. (N. J.), 843; The People v. Westlake, 62 Cal., 309; Manke v. The People, 17 Hun (N. Y.), 416; Kennedy v. The People, 39 N. Y., 246; Ins. Co. v. Harmer, 20 Ohio St., 456; and Whart. on Ev., sec. 434.

But, as stated above, the testimony, if inadmissible, not being objected to, we would not be warranted in reversing upon the ground that it was not admissible. We have referred to its questionable admissibility in order that we might be the better able to illustrate fully the character of testimony upon which this conviction here rests.

After the testimony for the State and the defendant above set out in substance had been adduced, the defendant asked the court to require the prosecution to put upon the stand as witnesses Mrs. Dobbs, Miss Dobbs, and Mrs. Whitaker and her son, which witnesses had been summoned by the State, and were then present in the court room. The bill of exceptions recites that the court refused to require the district attorney to put the witnesses, or any of them, upon the stand.

It will be seen from the brief resume of the evidence we have given above that defendant's theory was sustained by his own positive testimony, and his declaration, made immediately after the killing to the witness Mrs. McClarey, to the effect that the shooting was done in his necessary self-defense. It will further be seen that the State's theory was alone supported by circumstantial evidence and the opinions of experts, as above set out. The question is whether the court should have required the prosecution to put the eye-witnesses upon the stand.

Upon this subject the doctrine is thus laid down by Mr. Greenleaf: "A fourth rule, which governs in the introduction of evidence, is that which requires the best evidence of which the case in its nature is susceptible. This rule does not demand the greatest amount of evidence which can possibly be given of any fact, but its design is to prevent the introduction of any which, from the nature of the case, supposes that better evidence is in possession of the party. It is adopted for the prevention of frauds; for, when it is apparent that better evidence is withheld, it is fair to presume that the party had some sinister motive for not producing it, and that if offered his design would be frus-

trated.   The rule thus becomes essential to the pure administration of justice.   In requiring the production of the best evidence applicable to each particular fact, it is not meant that no evidence shall be received which is merely substitutionary in its nature, so long as the original evidence can be had.   The rule only excludes that evidence which in itself indicates the existence of more original sources of information."   1 Greenl. on Ev., sec. 82.   See, also, 1 Black. Com., book 3, side page 371.   The rule laid down by Mr. Burrill is, that presumptive evidence ought never to be relied upon where direct testimony is willfully withheld.   Burrill on Circ. Ev., 730.   "Indeed, the rule is general, you should not be permitted to grope in the twilight of circumstantial evidence when the broad daylight of direct and positive proof is attainable."   Porter v. The State, 1 Texas Ct. App., 394, and authorities cited.   See, also, Cotton v. Campbell, 3 Texas, 493; and Scott v. The State, 19 Texas Court of Appeals, 325, wherein it is held, that "positive evidence is always required when from the nature of the case it appears it might possibly have been had."

We are of the opinion that the State, under the circumstances shown, should have been required to put the eye-witnesses—or some of them, at least—upon the stand.   They had been summoned as witnesses for the State.   Their evidence was both admissible and attainable.   They were in the court house in obedience to their summons as witnesses.   Their testimony was certainly more direct and positive than the evidence which the State introduced and relied upon for this conviction; and it may be that had their testimony been produced it would have sustained the theory of the defense.

But suppose it be urged that the defendant could have put these witnesses upon the stand to prove the facts they knew, "to force him to do so would be to deprive the defendant of the benefit of the presumption of innocence, and to throw upon him the burden of proving his innocence.   It is the *res gestœ* of the whole transaction, the burden of which rests on the prosecution, so far at least as evidence is attainable.   It is that which constitutes the prosecutor's case, and as to which the defendant has the right of cross-examination.   It is that which the jury is entitled to have before them; and, until this is shown, it is difficult to see how any legitimate inference of guilt or of the degree of the offense can be drawn."   Hurd v. The People, 25 Mich., 405; Hunnicutt v. The State, 20 Texas Ct. App., 634.

For the error above discussed and pointed out, the judgment is reversed and the cause remanded.                         :

*Reversed and remanded.*

Davidson, J., being disqualified, did not sit in this case.