### EDWARD CHAMP v. THE STATE.

*No. 69. Decided April 22.*

**1. Charge of Court, How Construed.** — A charge of a court should be construed as a whole; and where no bill of exceptions has been reserved to the charge, an error in a preceding paragraph, which is cured by a subsequent paragraph, so as to entirely eradicate or render it harmless, will constitute no ground of complaint, much less reversible error.

**2. Opinion Evidence.**—Upon a trial for murder, the defendant proposed to prove, by a witness who had examined the fatal wound on deceased, that, in his opinion, the same must have been made by some one directly in front of deceased; which testimony, on objection of the prosecution, was excluded. *Held*, that the ruling was correct. A witness, though an expert, while he may describe the wound, giving its size, location, etc., will not be allowed to give his opinion as to the position of the parties at the time it was inflicted.

**3. Error and Omission in Charge of the Court as to Penalty Harmless, when.**—See a charge, set out in the opinion of the court, which was held not obnoxious to objection for bad spelling and omission as to penalty, where no exception had been reserved to said charge, and the jury could not have been misled by the same to the injury of appellant.

**4. Separation of Jury.**—An accidental separation of the jury for a few minutes will not constitute reversible error, where there was not the slightest probability that they were thereby influenced in their finding.

APPEAL from the District Court of Colorado. Tried below before Hon. GEO. McCORMICK.

Appellant was indicted for the murder of one Jerre Ford, by cutting and stabbing him with a knife. The parties, defendant and deceased, were negroes, and the killing occurred at night at a festival, where a large

number of negroes were congregated. As stated in the opinion, there is great conflict in the testimony of the sixteen or eighteen witnesses who testified to the circumstances attendant upon the homicide. According to some of these witnesses, defendant rushed into the house with an open knife in his hand and stabbed the deceased in the neck, severing his jugular vein, killing him instantly. Deceased, at the time he was thus stabbed, was standing up against the side of the wall of the house, neither doing nor saying anything, and having no weapon of any kind on his person. According to the testimony of other witnesses, deceased had been engaged in a difficulty with two or three other negroes, several of whom he had cut with his knife, and that when defendant entered the room he turned upon him and was cutting him also with a knife at the time defendant inflicted the deadly wound upon him. The officers who examined the body and held the inquest found deceased's hand tightly clasping his open, bloody knife, which knife was identified as the knife of deceased; and defendant had several cuts upon his head and neck, as well as upon the back of his coat, and was laid up for some two weeks with his wounds, which wounds, he claimed, were inflicted by deceased. His testimony, in several important particulars, was directly contradicted.

At the trial he was found guilty of murder of ·the second degree, his punishment being assessed at five years confinement in the penitentiary.

One of the grounds in the motion for a new trial was the separation of the jury. As to this matter, the record discloses, that when the jury were retiring to consider their verdict some of the panel stopped to get water in the court room, and in this way became separated for a few moments from their fellows, who had gone on; but it was shown that they neither mingled, conversed with, nor was anything said to them by any one about the case by the crowd present in the court room.

The following are paragraphs 9 to 13 of the charge referred to in the opinion:

"9. Among other things which the law deems sufficient causes to produce a passion that would reduce an unlawful killing from murder to manslaughter, would be an assault and battery by the person killed on the person killing, or a serious personal conflict between the parties, in which the person killed, by means of weapons or other instruments of violence, or by means of superior personal strength, inflicts bodily injury on the party doing the killing.

"10. It would not be an adequate cause to produce in the mind of a person who unlawfully kills another such passion as would reduce such killing from murder to manslaughter, that the party killed had used insulting words or gestures, or committed an assault and battery so slight as to show no intention to inflict pain or injury, unaccompanied by violence, to the person killing.

"11. If you believe from the evidence, that the defendant did, as

charged in the indictment, unlawfully kill the said Ford, and that such killing was done upon a sudden passion, and that such passion was aroused in him by an adequate cause for said passion, and that the killing was done under such a state of facts as constitutes an unlawful killing as herein after defined, and does constitute manslaughter as herein before defined, then you will find the defendant guilty of manslaughter, and assess his punishment at confinement in the penitentiary for any term not less than two years nor more than five years.

"11. The law presumes that every person accused of crime is innocent until his guilt is established by legal evidence to your satisfaction beyond a reasonable doubt; and in this case, if from the evidence you have doubt as to defendant's guilt, you will acquit him.

"12. If you find from the evidence, that the defendant, Champ, was the person who killed the deceased, Ford (for if you have a reasonable doubt as to who did kill Ford you must acquit Champ), and that defendant and Ford were engaged in a difficulty prior to the killing, and that after said difficulty defendant abandoned said fight and retreated outside of the room, and that deceased remained on the inside, and that defendant, Champ, had retreated from the room, and had gone on the outside of the same, and that after so going on the outside of the house he had sufficient time to reflect, and for his passion to cool, and to deliberate on the result of his actions, and that after so cooling off, or having sufficient time to cool off, and to act with deliberation, he then returned back into the house, and then, intending to kill Ford, or do him such bodily injury as would probably end in his death, he renewed the difficulty with Ford, and struck at him with a knife, and stabbed Ford in the throat and killed him, then such killing would be murder in the second degree, and you will so find.

"13. But if you find the defendant did after [have?] a difficulty with Ford in the house, and that defendant was assaulted by Ford, or in which defendant assaulted Ford, and that from any cause defendant, after leaving the room, immediately returned and cut Ford, so that he died, then if you believe that when he returned and cut Ford he was laboring under such sudden passion from the former conflict, from wounds, or from any other adequate cause for such passion, and that he killed Ford under such circumstances, he then would not be guilty of murder, but would be guilty of manslaughter, if all the other facts and circumstances in evidence in the case authorize you to so find, under all the provisions of this charge."

No briefs for either party have come into the hands of the Reporter.

HURT, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed by the jury at five years in the penitentiary.

The statement of facts contains ample proof of murder in the second degree, proof of manslaughter, and of self-defense. We have never examined a statement of facts in which there was so . much conflict in the evidence, or, as we think, more perjury. Murder in the second degree, manslaughter, and self-defense being presented, was the law correctly given in charge to the jury upon these phases of the case? Appellant requested one instruction, which was given. The record contains no bill of exceptions to the charge.

Upon motion for new trial, paragraphs 9 and 10 are complained of, because the things constituting adequate cause are limited to the injury of appellant. We do not think the paragraphs are subject to these contentions; but if they were, paragraph 11 cures the supposed error, rendering it harmless.

Paragraph 12 is complained of, the contention being, that it improperly instructs the jury upon the subject of cooling time. That this objection is well taken is very doubtful. But concede it to be incorrect, the error, if any, is entirely eradicated when read in connection with paragraph 13. The charge should be construed as a whole.

Upon the trial appellant proposed to prove by Ratcliff (he having examined the fatal wound on deceased), that in his opinion, judging from the direction and bearing of the wound, the same must have been made by some one directly in front of deceased. The proposed opinion of Ratcliff was rejected by the court, and appellant reserved his bill of exceptions. In this there was no error. A witness, though an expert, can describe the wound, giving its size, location, etc., but not his opinion as to the position of the parties.

Regarding the punishment, the court instructed the jury, if they "found appellant guilty, his punishment should be confinement in the penitentiary for any term not less than fives within your discretion," "five" being spelled "fives" and "years" being omitted; and upon this ground it is contended that the judgment should be reversed. There was no exception taken to the charge at the time, because of the omission and the bad spelling. The jury gave appellant the lowest term, five years. Were they misled by this charge to the injury of appellant? Evidently they were not.

The jury accidentally separated for a few minutes, without the slightest probability of being influenced thereby in their finding. There is no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.