JOE CAVANESS v. THE STATE.

No. 2525. Decided June 10, 1903.

**1.—Murder—Manslaughter—Charge.**

On a trial for murder, where the only testimony as to the facts attendant upon the killing was that of defendant himself, as a witness, and which showed self-defense, if anything, it was not error for the court to fail to charge upon manslaughter.

**2.—Charge—Weight of Testimony.**

For the court to single out certain portions of the testimony and charge

45 Crim.—14.

upon it, is to charge upon the weight of the testimony; but where such charge is favorable to defendant he can not be heard to complain.

**3.—Same.**

A charge is upon the weight of evidence and erroneous which instructs the jury "that the State has introduced testimony tending to show that the witness B. C. had made statements contradictory of his evidence on the stand."

**4.—Murder—Evidence—Relative Position of the Parties.**

Upon a trial for murder it is inadmissible to prove, either by an expert or nonexpert witness, facts tending to show his opinion as to the relative position of the parties at the time the fatal shot was fired.

Appeal from the District Court of Mason. Tried below before Hon. James Flack, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, thirty-five years imprisonment in the penitentiary.

The indictment charged appellant with the murder of Jack Parker, on the 21st day of January, 1902, by shooting him with a pistol.

The facts immediately attendant upon the killing, as testified to by defendant when upon the stand as a witness, will be found reproduced in the opinion.

No further statement necessary.

*M. D. Slator* and *W. C. Linden,* for appellants.

*Howard Martin,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of thirty-five years.

The twelfth ground of appellant's motion for new trial is that the court erred in failing to charge on manslaughter. Appellant insists that his testimony raises the issue of manslaughter. After testifying to various and sundry threats and acts of violence on the part of deceased towards him, appellant relates the circumstances of the killing as follows: "Deceased was plowing with two mules and two horses, and I plowed with two horses to a little plow. He plowed in front and I followed him, both plowing the same land. We ate dinner together; neither of us spoke a word during the day until we went to quit that evening. We ceased work about 4 o'clock. I had turned one of my horses loose, and put the saddle on the other, and then went to help deceased. While he was unharnessing his horses, I took the mules to the wagon and had put the breast yoke up and tied the lines back to the top of the front wheel on the left hand side, and had gone under the lines to hitch the inside trace, and deceased got through with his horses and came in behind the other mule on the other side of the tongue to hitch the other inside trace, and we came right close together. He said, 'You say you did not knock that horse's eye out?' And I said, 'No, I didn't.' He then said, 'You are a God-damned son of a bitch of a liar.' I said, 'Jack, God damn you, you can't talk to me that way,' and he

replied, 'God damn you, I will show you whether I can or not,' and he reached down to his right side with his right hand and drew a pistol and threw it down in my face, and I knocked it up with my left hand and shot him with my right. Just about the time I knocked the pistol up it went off over my head,. and immediately, almost at the same time his pistol went. off, I fired and shot him. He turned and ran off with the pistol in his hand. It was a black-handle pistol; looked like a rubber handle, blue or black barrel. I saw him until he went behind a small thicket about thirty or thirty-five yards from the wagon. I then went on around there, and he was lying on his back, and the pistol was six or eight inches from his right hand." This evidence does not raise the issue of manslaughter, but appellant's testimony, if true, merely shows self-defense. This the court properly charged upon.

Appellant complains of the following portion of the charge of the court: "In this case, the State having introduced in evidence the declarations of defendant, for the purpose of proving the act of the killing; then everything defendant said with reference to why and how he killed deceased becomes admissible as testimony, and the declarations of defendant that he was bound to kill deceased is to be taken as true, unless the State has proven the falsity of this declaration; and if the State has failed to satisfy you that such declarations are false, then you will acquit defendant. But in this connection I further charge you that the State is not bound to prove the falsity of such declaration by direct and positive testimony, but the same may be shown to be false by circumstances, by all the other evidence in the case, or by any evidence sufficient to satisfy your minds that the same were false." Appellant insists that this charge is upon the weight of the evidence, and that the same did not restrict the jury to the consideration of only such circumstances and evidence as had been adduced on the trial, but would permit the jury to consider any circumstance or evidence that might be sufficient to satisfy their minds that said declarations were false, whether adduced on the trial of the case or not. This last criticism of the charge is not well taken. While the charge is upon the weight of the evidence, yet it is favorable to appellant, and not against him. This being true, it is not reversible error. We have repeatedly held that it is erroneous for the court to single out isolated portions of the testimony and charge upon it, but we have also held that where such charge is on the weight of the evidence in favor of appellant, he can not complain. Appellant objects to the following portion of the charge: "The State introduced testimony tending to show that the witness Bill Cavaness had made statements contradictory of his evidence on the stand. I charge you that you can not consider this testimony indiscriminately with all the other evidence in the case, nor for the purpose of establishing the guilt of defendant; but you can only consider such testimony for the purpose for which it was introduced; that is, as affecting the credibility of the witness Bill Cavaness." Appellant insists that this charge is upon the weight of the evidence. This criticism is correct. We have often held that it is er-

roneous for the court to tell the jury that testimony has been introduced "tending to show," etc., since such language is an indication from the court that, in his opinion, the testimony does show that the witness has been contradicted. The court erred in giving this charge. Cortez v. State, 74 S. W. Rep., 907.

Appellant insists that the court committed error in admitting testimony shown by his bill of exceptions number 11, as follows: "When the witness H. B. Gibbs was on the stand, the State offered to prove by said witness that when the shot which inflicted the mortal wound on the body of deceased struck the body it was ranging in a sloping direction, downward. To which testimony defendant then and there objected, because the witness not having qualified as an expert on gunshot wounds could only give a description of the appearance of the wound, and the jury should have drawn therefrom their own conclusions, which objection the court overruled. And the witness testified that the shot appeared to have been fired from above and struck the body in a downward, slanting direction. To which ruling and action of the court, defendant excepted," etc. We have repeatedly held that even an expert witness could not testify as to the relative positions of defendant and deceased from the location of the wounds, but have also held that any witness, whether an expert or not, could testify that a bullet went in at one place on the body and came out at a lower place; that this was a matter of common observation and did not require an expert to testify thereto. We think the court erred in permitting the witness to testify to the facts as above detailed, since the same indicates that the witness is giving his opinion as to the relative position of the parties at the time the shot was fired. This is not permissible. The witness could state when deceased was shot, where the bullet came out or was found in the body, and leave the jury to infer from said facts the relative positions of appellant and deceased at the time the shot was fired. This testimony should not have been admitted as shown by this bill.

For the errors discussed the judgment is reversed and the cause remanded.

*Reversed and remanded.*