JAMES v. STATE.    (No. 5521.)

(Court of Criminal Appeals of Texas.  Feb. 4, 1920.  On Motion for Rehearing, March 10, 1920.)

1. CRIMINAL LAW ⟶763, 764(17), 783(2)—INSTRUCTIONS LIMITING EFFECT OF IMPEACHING TESTIMONY SHOULD NOT CHARGE ON WEIGHT OF EVIDENCE OR MISLEAD JURY.

Evidence which is competent for impeachment only may properly be limited, but court in so doing should observe the legal restrictions against charging on the weight of the evidence and against misleading the jury by erroneous construction.

2. CRIMINAL LAW ⟶673(3)—TESTIMONY AS TO REPUTATION OF WITNESSES FOR TRUTH AND VERACITY NEED NOT BE LIMITED.

Testimony as to the reputation of witnesses for truth and veracity required no limitation, being usable for no purpose other than as affecting the credibility of such witnesses.

3. CRIMINAL LAW ⟶673(3)—TESTIMONY CONTRADICTING WITNESS NOT TO BE LIMITED.

Where testimony contradicted witness, presenting a conflict for the solution of the jury, instruction authorizing jury to consider such testimony only in so far as it affected the testimony of such witness was error; such testimony not having impeached witness.

4. CRIMINAL LAW ⟶673(3)—LIMITATION OF CONFLICTING TESTIMONY AS IMPEACHING EVIDENCE ERROR.

Where state's witness gave no testimony touching certain witnesses for defendant, but merely testified as to good reputation for truth and veracity of another witness for the state, whose testimony conflicted with the testimony of such witnesses for the defense, instruction limiting consideration of testimony of first mentioned witness to its effect upon the credibility of such defendant's witnesses, including defendant himself, held reversible error.

5. WITNESSES ⟶248(1)—UNRESPONSIVE TESTIMONY SHOULD BE STRICKEN.

In homicide prosecution, testimony that a bribe had been offered to draft board to secure defendant's classification, where not responsive to question asked and where harmful and irrelevant, should not have been permitted to remain in the record against protest of defendant.

6. CRIMINAL LAW ⟶339—MERE CONCLUSION AS TO IDENTITY OF TRACKS NOT SUFFICIENT FOUNDATION.

Mere conclusion of witness as to identity of tracks is not sufficient foundation for introduction of evidence thereof.

7. HOMICIDE ⟶170 — FOUNDATION FOR INTRODUCTION OF EVIDENCE AS TO TRACKS SUFFICIENT.

In homicide prosecution where defendant denied having committed the crime, testimony that "The tracks I saw in the mouth of the lane that led up to the Whitehead house were large horse tracks; the tracks that led off down there looked like the very same tracks and were large tracks," held sufficient foundation for introduction of evidence as to the tracks.

8. WITNESSES ⟶254, 380(5)—PROSECUTING ATTORNEY'S EXHIBITION TO OWN WITNESS OF WRITING CONTAINING HER TESTIMONY IMPROPER.

Action of prosecuting attorney in exhibiting to witness for prosecution on redirect examination document containing her testimony on direct examination, though she claimed that her memory thereof was clear, held improper, not being within rule permitting refreshment of a witness' memory, and such conduct violated the rule prohibiting impeachment of a party's own witness.

9. CRIMINAL LAW ⟶1170½(1)—EXHIBITION TO WITNESS OF HER FORMER TESTIMONY HELD HARMLESS ERROR.

Action of prosecuting attorney in exhibiting to his own witness on redirect examination a statement of her testimony on direct examination, for purpose of refreshing her memory, though she claimed that her memory of testimony formerly given was clear, held harmless, where exhibition thereof failed to develop any conflict between testimony of witness on redirect examination and former testimony.

10. CRIMINAL LAW ⟶419, 420(6, 10)—HOMICIDE ⟶178(2)—TESTIMONY AS TO PROBABILITY OF OTHERS THAN DEFENDANT HAVING COMMITTED CRIME IS ADMISSIBLE IF NOT HEARSAY.

In homicide prosecution where state relies upon circumstantial evidence to prove that defendant committed the crime, testimony tending to show that other persons who were near at hand at the time of the homicide had a motive to destroy the life of deceased is admissible, but must be legal evidence and not the hearsay declarations of the deceased or others, unless they amount to a confession of guilt.

11. HOMICIDE ⟶178(3) — TESTIMONY THAT PERSONS OTHER THAN DEFENDANT THREATENED TO KILL DECEASED ADMISSIBLE.

In homicide prosecution wherein the state relied upon circumstantial evidence to prove that defendant had committed the crime, testimony that another had threatened to kill deceased by witness who claimed to have heard the threat held admissible.

---

⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. HOMICIDE ☞178(1) — DECLARATIONS BY DECEASED AS TO HOSTILITY OF OTHERS THAN DEFENDANT INADMISSIBLE.**

In homicide prosecution, testimony of declarations by deceased that others than defendant were hostile toward deceased *held* properly rejected.

**13. HOMICIDE ☞163(2), 178(1)—EVIDENCE OF MASS MEETING TO RUN DECEASED OUT OF COUNTRY WOULD BE ADMISSIBLE TO SHOW OPPORTUNITY TO COMMIT CRIME.**

In homicide prosecution, testimony as to a mass meeting to run deceased out of the country because he was a lawbreaker would have been admissible upon showing that participants were in such a proximity to the homicide as to afford them opportunity to have committed it, but in absence of such showing should have been rejected, unless admissible as bearing upon the motive or animus in the case.

### On Motion for Rehearing.

**14. CRIMINAL LAW ☞1137(8)—REQUEST FOR INSTRUCTION LIMITING TESTIMONY DID NOT CONDONE ERROR OF LIMITING TESTIMONY OF OTHER WITNESS OVER OBJECTION.**

That appellant invited error in requesting the court to limit the testimony of certain state witnesses did not condone error of court in limiting the testimony of another witness over the express specific objection of the appellant.

**15. CRIMINAL LAW ☞844(1)—EXCEPTION TO CHARGE LIMITING EFFECT OF EVIDENCE SUFFICIENT.**

Defendant's exception to court's charge limiting testimony of certain witness, which was sufficient to inform court of wherein defendant considered instruction faulty and to afford an opportunity to correct it, *held* sufficient, under C. C. P. art. 735.

**16. CRIMINAL LAW ☞1056(2)—STATUTE REQUIRING EXCEPTIONS TO CHARGE NOT TO BE GIVEN TECHNICAL CONSTRUCTION.**

Code Cr. Proc. 1911, art. 735, requiring exceptions to the charge before it is read to the jury, should not be given so technical a construction as to deny the right of review on appeal, where a substantial compliance is shown and its end practically accomplished.

Appeal from District Court, Robertson County; John Watson, Judge.

John James was convicted of homicide, and he appeals. Reversed, and cause remanded.

H. S. Morehead and J. L. Goodman, both of Franklin, R. D. L. Killough, of Vernon, and Perry & Woods, of Franklin, for appellant.

C. M. Cureton, Atty. Gen., E. F. Smith, Asst. Atty. Gen., and K. W. Gilmore, Co. Atty., of Franklin, for the State.

MORROW, J. The deceased, Claude Whitehead, was called to the door of his dwelling early on the morning of the 14th day of June, and shot to death by some person, who used an automatic shotgun loaded with buckshot. The wife of deceased testified that immediately after her husband was shot she ran to the door and on the gallery and saw a man with a gun in his hands, whom she identified as the appellant. The state introduced other testimony to the effect that on the day preceding the homicide the appellant had been called before the federal draft board in response to a notice that effort would be made to give him a less favorable classification in the selective draft, and that, being refused by the secretary of the board information as to the informant, indicated that he believed it to be the deceased.

The state advanced the theory that the appellant rode on horseback from the home of his father some two miles to a point near the home of the deceased; that he dismounted and hitched his horse, going on foot across the field or pasture to the home of deceased, and thereafter returning to the point where his horse was hitched. This theory of the state is supported by testimony of witnesses that the appellant, during the night preceding the homicide, had visited the homes of several parties whose dwellings were en route from that of his father to that of the deceased; that he was drinking intoxicants; and that he made threats or expressed hostile intentions towards the deceased. The theory was also supported by testimony to the effect that there were certain horse tracks found in the road and at a point where it was claimed that the horse of the assassin was hitched, and testimony as to circumstances going to show that the appellant was riding on the road in question, and that he was seen doing so at a time and place which were coincident with the theory of the state. Evidence by the state was also introduced to the effect that there were discovered on the morning immediately after the homicide tracks made by some person wearing highheeled boots, indicating that the person had gone from the point where the horse was hitched to the dwelling of deceased and returned therefrom.

The appellant testified and denied the assassination and swore to facts showing an alibi, and in support of this theory he introduced a number of witnesses. He introduced evidence to the effect that the person riding horseback was another; and several of his witnesses testified negativing the fact that the appellant wore boots on the occasion mentioned, was in possession of boots, or in the habit of wearing them. He introduced some testimony showing motive and opportunity of others to commit the offense, and much testimony to impeach the wife of the deceased, both by showing a bad reputation for truth and veracity and statements out of court contradictory of her inculpatory testimony.

In support of his theory of alibi, and to show that he was not wearing boots on the occasion of the homicide, the appellant used the testimony of his father, William James, his mother, Mrs. William James, and his brother, Riley James. He used testimony of the witness Robert Price to support his theory of alibi. To rebut the theory that he was wearing boots, he also used the witnesses George Castillo and Roy McBride. To prove contradictory statements of Pearl Whitehead, the wife of deceased, he used, among others, Frank Welch and George Miller. J. M. Reynolds gave testimony that a state witness named Henry Shirley had threatened to kill the deceased; it appearing from other testimony that Shirley was in proximity to the homicide at the time it took place. In rebuttal for the state, the witness McDonald testified that both the appellant and his brother Riley were in possession of boots about the time of the homicide. He testified that Reynolds and Robert Price had made statements out of court in conflict with their testimony on the trial. He also testified that the reputation of Price for truth and veracity was bad, and gave a similar statement with reference to George Miller and Frank Welch, and supported the good reputation of Mrs. Pearl Whitehead for truth and veracity. The charge of the court touching the testimony of McDonald used the following language:

"Certain testimony of the witness Bob McDonald has been introduced as evidence in this case, and you will consider the same, if you consider it at all, only in passing upon the credibility of the witnesses Ruff James, John Madden, George Castillo, Roy McBride, Wm. James, Mrs. Wm. James, Riley James, Frank Welch, George Miller, Robert Price, J. M. Reynolds, and the defendant, John James."

The appellant duly made and reserved an exception to this paragraph, containing the following language:

"Defendant objects and excepts to all that portion of the court's revised charge wherein the court undertakes to limit the testimony of the witness Bob McDonald, for the reason that the said instruction relating to the testimony of said witness is wholly inapplicable to the facts in this case; that it is misleading, confusing, and is calculated to lead the jury to consider said testimony in a manner wholly unauthorized under the law as applied to the facts in this case; and directs the jury to consider the testimony of the said witness Bob McDonald in passing upon the credibility of certain witnesses whose testimony could not be affected or impeached by the testimony of the said Bob McDonald."

[1] We are impressed with the view that in refusing to amend his charge in response to this exception the learned trial judge inadvertently fell into error. It is proper to limit evidence which is competent for impeachment alone, and which is susceptible to use by the jury against the accused for some

other purpose. Branch v. State, 15 Tex. App. 96, and other cases in 2 Vernon's Texas Crim. Statutes, p. 441, note 31; Coker v. State, 35 Tex. Cr. R. 57, 31 S. W. 655; Wilson v. State, 37 Tex. Cr. R. 373, 35 S. W. 390, 38 S. W. 624, 39 S. W. 373, and other cases cited in White's Texas Code Crim. Procedure, p. 529. In framing such a charge, the legal restrictions against charging on the weight of the evidence and against misleading the jury by an erroneous construction must be observed. Stull v. State, 47 Tex. Cr. R. 549, 84 S. W. 1059; Benson v. State, 54 Tex. Cr. R. 12, 111 S. W. 403; Cavaness v. State, 45 Tex. Cr. R. 211, 74 S. W. 908; McCleary v. State, 57 Tex. Cr. R. 139, 122 S. W. 26; Taylor v. State, 50 Tex. Cr. R. 562, 100 S. W. 393, and other cases cited in Branch's Annotated Texas Penal Code, p. 122, § 190. The necessity for placing any limitation upon the testimony of the witness McDonald is by no means clear as to any of the witnesses named in the charge, unless it be the witnesses Reynolds and Price.

[2, 3] The testimony of the witness McDonald with reference to the reputation for truth and veracity of the several witnesses mentioned by him required no limitation, for the reason that it was usable for no purpose other than as affecting the credibility of the witnesses. His testimony relating to the witness Riley James simply contradicted the witness, and did not impeach him. James claimed that neither he nor his brother had boots; McDonald claimed that they did have boots. This was not impeaching testimony, but presented a conflict for the solution of the jury. Wasson v. State, 3 Tex. App. 474.

[4] As to the other witnesses named in the charge, McDonald's testimony is in no sense impeaching and not even in conflict. If their testimony was true, the state's witness Pearl Whitehead was mistaken in her identification of the slayer of her husband. The court was not warranted in instructing the jury that McDonald's testimony could be considered as affecting their credibility. McDonald having given no testimony touching these witnesses, the occasion for giving a charge calling attention to his testimony did not arise. The same error appears in Hardin v. State, 57 Tex. Cr. R. 407, 123 S. W. 613. The charge was particularly calculated to injure the appellant in that part of it in which the jury was given to understand that the testimony of McDonald bears upon the credibility of the appellant, John James. There is nothing in McDonald's testimony which is in the nature of impeaching testimony against the appellant. He did not even testify upon the subject of whether he was wearing boots or not, but did insist in his testimony that he did not shoot the deceased, and was not present, and therefore was not the man whom Mrs. Pearl Whitehead claims to have seen with a gun in his hands immediately after the fatal shots were fired. The testimony of the ap-

pellant, therefore, and that of Mrs. Pearl Whitehead are in direct opposition to each other. The only testimony of McDonald on the subject of Mrs. Pearl Whitehead is that she bore a good reputation for truth and veracity. If the jury drew the inference that this was impeaching testimony against the appellant, it would tend to discredit him and support her upon the vital issue in the case. There being a total want of evidence upon which to base the charge in question so far as it relates to the appellant and to his most important witnesses, and its tendency being to cause the jury to disbelieve them, we are constrained to the view that the matter presented is of such consequence that it requires a reversal of the judgment. Dobbs v. State, 57 Tex. Cr. R. 55, 121 S. W. 859. The same vice appears in the paragraph of the charge relating to the evidence of the witness Bob Pilgreen.

[5] The record of the evidence is voluminous, and there are many bills of exceptions; many of them relating to matters which are not likely to occur again. A witness who was the secretary of the draft board made a voluntary statement, not responsive to any question asked him, to the effect that the information of the board was that a bribe had been offered to secure the appellant's classification. Attention is called to the fact that the objection to this, or request to exclude it, was not framed in a specific manner, and it is possible that in the way the matter is developed in the record no reversible error was committed in this respect. The statement of the witness, however, being obviously harmful and irrelevant, should not have been permitted to remain in the record against the protest of the appellant.

[6,.7] The rules with reference to the introduction of evidence of tracks are well defined, and require that the witness identifying them do so by something more than his mere conclusion that they are the same tracks. As the bill is prepared in the instant case, it is not clear to us that this rule was violated. The witness said:

"The tracks I saw at the mouth of the lane that led up to the Whitehead house were large horse tracks. The tracks that led off down there looked like the very same tracks, and were large tracks."

We think the objection to this evidence relates rather to its weight than its admissibility.

[8, 9] The prosecuting officer, we think, offended against the rule which prohibits, except under certain circumstances, cross-examination and impeachment of his own witness. In his inquiry of Mrs. Welch on redirect examination he exhibited to her a certain document containing her former testimony, and asked her if she did not thereon make a certain statement. We do not think the transaction comes within the rule which permits the refreshing of a witness' memory. This witness claimed that her memory was clear, and the use made of her former testimony smacks rather of an effort to get that before the jury than to refresh her memory touching the real occurrence. Spangler v. State, 41 Tex. Cr. R. 430, 55 S. W. 326; McLin v. State, 48 Tex. Cr. R. 551, 90 S. W. 1107; Anderson v. State, 202 S. W. 944, L. R. A. 1918E, 658. In this instance, however, we would not be disposed to order a reversal upon this ground, for the reason that there was a failure to develop any conflict in the two statements of the witness.

[10-12] There are a number of bills of exceptions directed to the action of the court in the admission of evidence tending to show that other persons who were near at hand at the time of the homicide had a motive to destroy the life of the deceased. Some of this testimony was admitted in evidence, some of it was excluded, and some of it the court after excluding it changed his view and offered to admit it. Testimony of this character, in a case where the state relies upon circumstantial evidence, is regarded as appropriate testimony. Dubose v. State, 10 Tex. App. 230, and annotations thereof in 5 Rose's Notes of Texas Crim. Reps. p. 175; Taylor v. State, 81 Tex. Cr. R. 359, 195 S. W. 1147. The evidence by which the probability that another committed the offense may be established, however, must be legal evidence; and this, generally speaking, is not the hearsay declarations of the deceased or others, unless they amount to a confession of guilt. Blocker v. State, 55 Tex. Cr. R. 32, 114 S. W. 814, 131 Am. St. Rep. 772. In the instant case, the proof that Shirley had threatened the life of deceased, coming from witnesses who claimed to have heard the threat made, was properly received; but declarations by the deceased that Shirley and others were hostile to him were properly rejected. Hodge v. State, 64 S. W. 242; Wharton Cr. Ev. p. 1739.

[13] There was offered in evidence some testimony to the effect that in 1914 there had been a mass meeting, the object of which was to run the deceased out of the country because he was a lawbreaker. The bills of exceptions touching this matter, and many others to which we have adverted in general terms, are not sufficiently specific in disclosing the nature and relevancy of the testimony offered for us to determine with accuracy the merits of the contention. We will say this, if it appeared that this meeting took place and had a specific application to the deceased, and was accompanied by other evidence showing that the participants were in such proximity to the homicide as to afford them opportunity to have committed it, that the evidence should be received. Otherwise it should be rejected, unless it should become admissible as bearing upon the motive or animus of some witness in the case.

· We do not find in the record evidence rendering it incumbent upon the court to instruct the jury on the issue of temporary insanity resulting from the recent use of intoxicating liquors.

For the error pointed out, the judgment is reversed and the cause remanded.

### On Motion for Rehearing.

[14, 15] We think the fact that the appellant invited error in requesting the court to limit the testimony of the state witnesses Mrs. Hobbs, Bob Pilgreen, and Mrs. Cobb, on the mistaken assumption that this testimony was impeaching and required limitation, would not condone the error referred to in the original opinion. Appellant, having requested the court to limit the testimony of the witnesses named above, of course could not complain that it was done. This estoppel, however, could not be extended so that it would embrace a limitation of the testimony of other witnesses, done over the express specific objection of the appellant. But even if such were the rule, it would not cure the error which we endeavored to point out in the original opinion in instructing the jury that the testimony of the witness McDonald might be considered for the purpose of impeaching the testimony of the appellant given in his own behalf. Nor do we think that the exception made to the court's charge was inadequate to call the court's attention to the fact that the apellant complained of the charge quoted in the original opinion and referring to the testimony of the witness Bob McDonald. The charge expressly directed the attention of the jury to the consideration of McDonald's testimony as bearing upon the credibility of the appellant, naming him. The exception was directed at the entire charge limiting the testimony of McDonald. It gave various reasons for objecting to it, among them that—

"It directs the jury to consider the testimony of said witness Bob McDonald in passing upon the credibility of certain witnesses whose testimony should not be affected or impeached by the testimony of said McDonald."

One of the witnesses referred to in the court's charge in question was the appellant, John James. To declare that the exception was not specific to advise the trial judge that the appellant objected to the charge mentioned, and that the objection included the reference in the charge to the impeachment of the appellant, would give the statute requiring exceptions to the charge before it is read to the jury an effect more restrictive than is warranted by its language.

[16] In writing the statute (article 735, C. C. P.) the Legislature had in mind that the objections to the charge would be passed upon by the trial judge acquainted with the facts of the case and the law applicable thereto and the terms in which the charge prepared by him was framed. The objects sought were to let the trial judge know in what respect the accused regarded the charge as faulty, to afford opportunity to correct it, and to make unavailable to the accused objections to the charge not made at the trial. These in the instant case, we think, were satisfied. The particular paragraph of the charge assailed was pointed out, and the objections thereto distinctly specified within the meaning of the statute. Clarendon v. McClelland, 86 Tex. 192, 23 S. W. 576, 1100, 22 L. R. A. 105, and annotations thereof in 4 Rose's Notes on Texas Reports, p. 494. The statute should not be given a construction so technical as to deny the right of review on appeal, where a substantial compliance is shown and its end practically accomplished. Railway v. Pemberton, 106 Tex. 466, 161 S. W. 2, 168 S W. 126.

The motion is denied.