R. L. McCULLERS v. THE STATE.

No. 16113. Delivered November 29, 1933.
State's Rehearing Denied February 14, 1934.
Reported in 67 S. W. (2d) 879.

The opinion states the case.

*Seb F. Caldwell,* of Mt. Pleasant, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for seven years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed N. F. Cash by shooting him with a shotgun.

Deceased, his son Trannie Cash, and his step-daughter were picking cotton. Trannie Cash, a witness for the state, testified that, seeing appellant approaching with a shotgun, he went to his house and got a pistol and shotgun and returned to the scene. When he came back appellant was walking away from deceased, who was still picking cotton. After walking about twenty feet from deceased, appellant began changing the shells in his gun, seeing which the witness (Trannie Cash) fired his shotgun at appellant, who then shot deceased and shot at the witness. Appellant testified that before Trannie Cash shot the first shot deceased told him (Trannie Cash) to shoot the s— of a b—, following which Trannie shot at him. He said he then shot at Trannie and next fired the fatal shot at deceased. He declared that at the time he shot deceased the latter had his hand in his pocket. His testimony was to the effect that he believed deceased was going to kill him; and, further, that he fired at Trannie Cash after Trannie had shot at him.

After submitting an instruction covering appellant's right to defend himself against the appearances of danger as viewed from his standpoint at the time, the court instructed the jury, in paragraph 14 of the charge, as follows: "In this connection however you are further instructed that if you believe from the evidence beyond a reasonable doubt that the defendant had made an unlawful assault upon the deceased, or was making

some demonstration or doing some act or from words coupled with acts and demonstrations, if any, there was created in the mind of the said Trannie Cash a reasonable apprehension or fear that his father N. F. Cash was in danger of losing his life or suffering serious bodily injury at the hands of the defendant, and you do not believe from the evidence beyond a reasonable doubt that the deceased and Trannie Cash had entered into a conspiracy or agreement or were acting together or aiding or encouraging each other to take the life of the defendant or to do him serious bodily injury then the said Trannie Cash had a right to use all force that was reasonably necessary to prevent the defendant from taking the life of his father, or doing him serious bodily injury, and under such circumstances such attack, if any, by Trannie Cash upon the defendant would not be an unlawful attack or assault."

The foregoing charge was apparently based on the testimony to the effect that appellant was changing the shells in his gun immediately prior to the time that Trannie Cash fired at him. Appellant admitted that he was changing the shells, but declared that he was doing so in order to protect himself against Trannie Cash and deceased, and that, at the time, deceased was telling Trannie Cash to shoot him. The charge is erroneous in that it in effect advised the jury that the right of appellant to defend himself did not exist if Trannie Cash, viewed from his (Trannie Cash's standpoint) was justified in firing at appellant. See Branch's Annotated Penal Code, sec. 1928; Casner v. State, 42 Texas Crim. Rep., 122; Norris v. State, 42 Texas Crim. Rep., 565. Viewed from their respective standpoints, both appellant and Trannie Cash might have been justified in firing. However, Trannie Cash was not on trial. Appellant's right to defend could not be made to depend upon the acts of Trannie Cash as viewed from Trannie Cash's standpoint. The matter was to be viewed from appellant's standpoint. Branch's Annotated Penal Code, sec. 1928; Beard v. State, 47 Texas Crim. Rep., 51. We think the court should have responded to appellant's exception to the charge.

In view of another trial, we call attention to the matter presented by bill of exception No. 3. It appears from this bill that, over appellant's objection, the state was permitted to prove by the physician who examined deceased's wounds that in his opinion deceased was stooped at the time he was shot. While we are unable to determine from the meagre recitals in the bill of exception whether the reception of this testimony should work a reversal, we call attention to the rule inhibiting a witness, not present at the homicide, to state his opinion as to the

360

relative position of the parties at the time of the shooting, when same is in dispute. Neither a non-expert nor an expert witness may thus be permitted to give an opinion upon the very issue the jury are impaneled to try and about which the jurors are as well qualified to speak as the witness. See Boles v. State, 299 S. W., 407.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state's motion for rehearing is predicated on the proposition that the paragraph of the charge quoted in our original opinion, when considered in connection with the instructions as a whole, should not be held erroneous to the extent of demanding a reversal of the judgment.

Ill feeling had been engendered and hard words exchanged between appellant on the one side and deceased and his son, Trannie Cash, on the other. The cause of contention at the time of the homicide was regarding the gathering of cotton. Appellant went with a shotgun to the field where deceased and Trannie were picking cotton. Trannie saw appellant coming when he was still 400 yards away, went to the house and returned with a shotgun and pistol. When he got back appellant was walking along talking to deceased about the cotton. Trannie's version of the tragedy, stated in a few words, was that as he (Trannie) approached, appellant stepped off some twenty steps and changed the shells in his gun, and that, fearing appellant was going to shoot either himself or his father, he (Trannie) fired at appellant, who returned the fire, directing the first shot at deceased and the second at Trannie. Appellant's version was that he saw Trannie approaching with a gun in a manner as though slipping up on some one; that he then changed the shells in his gun, at the same time requesting deceased to tell Trannie to stop, as he (appellant) wanted no trouble; that he then stepped off some twenty steps and deceased told Trannie to shoot the s— of a b—; that then Trannie fired at appellant; appellant then fired, first at Trannie and then at deceased.

The court told the jury in substance that if deceased and Trannie Cash were acting together to take the life of appellant and that just before appellant shot deceased Trannie Cash had

made an *unlawful attack* on appellant he would be justified in acting upon a reasonable apprehension of danger, as it appeared to him from his standpoint, at the hands of either deceased or Trannie, and that if he killed deceased under such circumstances the jury should acquit him. Having by this charge made appellant's right depend upon an *unlawful attack* of Trannie, the court immediately followed it by the charge quoted in our original opinion, the effect of which was to tell the jury that Trannie's attack *would not be unlawful* if, when he fired at appellant, the latter was doing something which caused Trannie to have a reasonable apprehension that his father was in danger at the hands of appellant, thereby shifting appellant's right and making it depend, not on his own viewpoint at the time, but on the viewpoint and apprehension of Trannie.

A further analysis of the defensive charge, in connection with the one complained of, rather confirms us in the view expressed originally. Remaining of the opinion that the proper disposition was made of the case, the state's motion for rehearing is overruled.

*Overruled.*