**Bernice MAYS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54200.**

Court of Criminal Appeals of Texas, En Banc.

March 22, 1978.

---

Ken J. McLean, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Sam D. Adamo, Asst. Dist. Attys., Houston, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for murder.[1] Punishment was assessed by the jury at twenty years.

At the outset, appellant contends that the court erred over her timely objection in failing to charge the jury that "the defendant had the right to continue to shoot until the danger or apparent danger ceases. The danger being viewed from the defendant's standpoint at the time of the difficulty."

The testimony of appellant reflects that she and the deceased had been living to-gether at 3022½ Lelia in Houston since sometime in 1971. Appellant stated that on December 25, 1972, she and the deceased spent the day visiting two of her sisters and going to bars. Appellant and the deceased argued throughout the day. After they returned home a fight ensued, appellant relating that the deceased "knocked me from the door into the living room clean across the couch onto the coffee table." The deceased then got in bed. According to appellant, the deceased was facing the wall. The appellant "got in the bed and I laid down facing his back." Deceased then turned on his left elbow in a "leaning position" with a gun in his hand and said, "I am tired of your b——s——, tonight it is going to be me or you." Appellant jumped and the gun fell to the bed. Both the deceased and appellant reached for the gun. Appellant got the gun, "pulled the trigger twice and he said 'oh' and laid back down just like he was." In response to a question on direct examination about the period of time involved from the time the deceased raised up until "the gun went off," appellant responded, ". . . just happened all of a . . . in a quick minute, it looked like to me, I just throwed the pistol down and called the police."

The court in its charge instructed the jury on the law of self-defense and murder without malice. Appellant's objection to the court's charge for failure to instruct the jury on the right of appellant to continue to shoot until the danger or apparent danger ceases was overruled, and this action by the court forms the basis of the ground of error.

In *McElroy v. State*, Tex.Cr.App., 455 S.W.2d 223, the rule regarding such charge set forth in *Goodman v. State*, Tex.Cr.App., 114 S.W.2d 885, was quoted with approval, where it was stated:

"the refusal to so charge was not error when there was (1) no evidence that the defendant fired shots after the deceased

1. The conviction resulting from the first trial in which punishment was assessed at ten years was reversed by this Court in *Mays v. State*, 513 S.W.2d 846, for failure of the trial court to charge on murder without malice.

fell, (2) no evidence that the combatants changed position and (3) the shots were fired without any noticeable intermission, it being a continuous and rapid transaction."

There is no evidence that there were any shots fired after the deceased fell or "laid back down just like he was" on the bed, nor is there any showing that after the appellant fired the two shots that the parties materially changed positions, and there is no evidence of continuing danger. As in *McElroy*, it is undisputed that the appellant fired the shots in rapid succession. We find that the court did not err in refusing to give the requested charge.

Appellant next contends that the trial court erred "in allowing the State's expert witness to give his opinion as to the relative position of the parties at the time of the shooting."

The record reflects that the State called Dr. Giles Sheldon Green as a witness. Green was employed as a pathologist by the Harris County Medical Examiner's Office. The appellant stipulated to Dr. Green's qualifications as an expert.

Dr. Green performed the autopsy on the deceased on December 26, 1972. This examination revealed that the deceased had suffered two gunshot wounds. One of these wounds was to the head, with the point of entry being in the area behind the right ear. The other wound was to the chest. This shot entered the upper left portion of the chest, passed directly through the heart, and exited from the left side of the back.

Before Green testified the jury had heard the testimony of John M. Donovon, one of the Houston Police Department homicide detectives. Donovon testified that he found the deceased's body lying on its left side on a bed. Donovon's investigation further revealed that "directly underneath the complainant's body was a slug that had gone through the back, through his front and through the bed underneath on the floor."[2]

During the direct examination of Dr. Green, the following exchange occurred:

"Q Assume for a moment, if we may, Doctor, that the deceased was found in this position on his side, how do you account for the—and he is not moved, he received these two wounds, one to the chest from the front and one to the head from the back, is there any way you can account for his position in that manner?

\*    \*    \*    \*    \*    \*

"MR. McLEAN [defense counsel]: I object to speculation. If he has an opinion he has seen under similar conditions, I don't object. But speculation, him not being there, is outside the scope of his expertise.

"THE COURT: . . . Is that an opinion based on your professional experience?

"A Well, let's say the opinion would be a logical reconstruction of events, though we must leave open the possibility other things could have happened.

"THE COURT: Do you have your opinion based on your personal experience?

"A Yes, sir, that is correct."

2. We note that while appellant is complaining about the State eliciting testimony from Green in regard to the position of the deceased when the shots were fired, he tried to elicit exactly this same type of testimony from Donovon on cross-examination:
"Q At the time the shot was fired, the body must have been raised up to some extent?
"A No, sir.
"Q You weren't there, so we have to guess, but wouldn't the body really have been leaning on its left arm when he was shot?
"A Pardon me?
"Q I say the actual position at the time the shot was fired, like I say, we don't know, we weren't there, we only know what you found later.
"He would have been propped up on this left arm to get the shot to go into his body very extensively. In other words, his side would have been off the bed some?
"A Not necessarily, no, sir. The way he is laying, the hole is right—the hole is above the cover."

Green then proceeded to testify that "if that bullet which exited the left side of his back then continued through the bed and onto the floor, he must without doubt have been on his back at that point." In order to explain the deceased's change of position between the two shots, Green testified that "even a through-and-through wound of the heart, though it may well be fatal, is not going to stop the brain from functioning at that instant, and he could have himself rolled towards the wall."

We first note that appellant's objection appears to be insufficient to preserve the error in question. Appellant's attorney objected as follows: "I object to speculation. If he has an opinion he has seen under similar conditions, I don't object." In response to a question from the court, Green then testified that his opinion was based on "personal experience." By determining that Green's opinion was based on his professional experience, the trial judge appears to have granted appellant all of the relief that he sought.

■ Assuming that objection is properly preserved, we find there was no error in the admission of Dr. Green's testimony. Appellant refers us to several decisions of this Court where we have held testimony from witnesses not present at the time of a homicide as to the relative position of the parties at the time inadmissible. See *McCullers v. State*, 125 Tex.Cr.R. 357, 67 S.W.2d 879; *Williams v. State*, 30 Tex.App. 447, 17 S.W. 1971.

There are two justifications advanced in support of this rule. First, it is said that allowing such testimony invades the province of the jury. See *Boles v. State*, 108 Tex.Cr.R. 204, 299 S.W. 407. It is also said that such testimony is outside the knowledge of even expert witnesses. See *Boles v. State*, 109 Tex.Cr.R. 471, 5 S.W.2d 509

("The relative position of the parties at the time of the shooting could not properly be determined by either a non-expert or expert witness.").

■ The doctrine which prohibited testimony that would invade the province of the jury "is and has been long dead" as a proposition of law. *Boyde v. State*, Tex.Cr.App., 513 S.W.2d 588. This Court found the rule was no longer viable in *Hopkins v. State*, 480 S.W.2d 212. As we noted in *Hopkins*, we had long allowed many types of testimony that spoke directly to an "ultimate issue" in the case. Among the examples we referred to were: (1) medical testimony as to cause of death; (2) expert ballistics testimony identifying bullets as having been fired from a particular gun; and (3) expert testimony on the identity of fingerprints. Opinion testimony is required to prove intoxication. *Kelley v. State*, Tex.Cr.App., 529 S.W.2d 554; *Padillo v. State*, Tex.Cr. App., 420 S.W.2d 712.

■ It is no more an invasion of the province of the jury for an expert pathologist to express his professional opinion on the position of a body at the time a shot was fired than it is to allow all of the various types of testimony listed above.[3]

■ As to the contention that such testimony is outside the range of expertise of expert witnesses, we hold that whatever validity this premise may have had at one time, it is no longer valid. So long as a person has been qualified as an expert in this field and is expressing an opinion based upon his professional expertise, we find no reason why such evidence should be excluded.[4]

To the extent that our prior opinions have held that it was improper to admit testimony from a properly qualified expert witness as to the relative positions of the

3. We point out that our abandonment of the invasion of the province of the jury rule does *not* make opinion evidence admissible as to *legal* conclusions. For example, it is improper to allow any opinion evidence as to the guilt or innocence of a criminal defendant. *Boyde v. State*, Tex.Cr.App., 513 S.W.2d 588; *Spaulding v. State*, Tex.Cr.App., 505 S.W.2d 919.

4. Our holding today only applies to properly qualified expert witnesses. It is still improper for a non-expert witness to give an opinion of bodily position unless he was present at the shooting.

parties at the time of a homicide unless he was actually present at the time, they are hereby overruled.[5] The lack of presence at the time of the homicide goes to the weight rather than the admissibility of the evidence.

In *Hopkins v. State*, supra, we set out the following criteria for expert opinion testimony:

". . . (1) He must be competent and qualified to testify. (2) The subject must be one upon which the aid of an expert opinion will be of assistance to the jury. (3) His testimony may not state a legal conclusion."

After reviewing the evidence in the instant case, we find all three of the criteria have been met. No error is shown in allowing Dr. Green to testify as he did.

Lastly, appellant complains that the court erred "by allowing prejudicial jury argument by the prosecutor."

The record reflects the following complained-of argument occurred during the prosecutor's argument at the punishment stage of the trial:

"Can you honestly give her probation and say to Harris County, 'I will dump it in the Judge's lap.' What happens if she cuts loose again with someone else, gets in an argument and says, 'Hey, I got away with it once; why not again?' Can you look at that family then and say, 'I am sorry'?

"MR. McLEAN: That is not evidence. Talking about the future. It is speculative.

"THE COURT: Overruled."

The appellant had argued as follows: "Then you have to think about the person. We don't know Bernice Mays sitting over here; if it was someone else you don't absolutely know for certain what they would do if granted probation, because after all, none of us are fortune tellers, we can't look in the future. But you do know one thing. If she does have a sentence within the realm of probation, if she is granted probation, if she doesn't live up to her probation, you don't have to have another jury to come in. All you have to do is go before the Court and present what evidence there may be she has not lived up to probation, and the Judge has the right to revoke. So really how can twelve people really lose?"

■ Appellant had injected the subject of what the jury had to lose if they granted her motion for probation and appellant failed to live up to it. We find the complained-of argument was in response to the argument of opposing counsel. See *Alejandro v. State*, 493 S.W.2d 230. No error is shown.

The judgment is affirmed.

---

5. The following is a partial listing of the cases which are overruled insofar as they hold an expert witness cannot testify as to bodily position at the time of a homicide: *Bailey v. State*, Tex.Cr.App., 365 S.W.2d 170; *Craig v. State*, 171 Tex.Cr.R. 256, 347 S.W.2d 255; *Ramsour v. State*, 165 Tex.Cr.R. 481, 308 S.W.2d 56; *Villareal v. State*, 140 Tex.Cr.R. 675, 146 S.W.2d 406; *McCullers v. State*, 125 Tex.Cr.R. 357, 67 S.W.2d 879; *Davis v. State*, 114 Tex.Cr.R. 72, 24 S.W.2d 417; *Boles v. State*, 109 Tex.Cr.R. 471, 5 S.W.2d 509; *Boles v. State*, 108 Tex.Cr.R. 204, 299 S.W. 407; *Bennett v. State*, 95 Tex.Cr.R. 70, 252 S.W. 790; *Pearson v. State*, 56 Tex.Cr.R. 607, 120 S.W. 1004; *Cavaness v. State*, 45 Tex.Cr.R. 209, 74 S.W. 908; *Morton v. State*, 43 Tex.Cr.R. 533, 67 S.W. 115; *Hardin v. State*, 40 Tex.Cr.R. 208, 49 S.W. 607; *Blain v. State*, 33 Tex.Cr.R. 236, 26 S.W. 63; *Champ v. State*, 32 Tex.Cr.R. 87, 22 S.W. 678; *Coyle v. State*, 31 Tex.Cr.R. 604, 21 S.W. 765; *Williams v. State*, 30 Tex.App. 429, 17 S.W. 1971; *Thompson v. State*, 30 Tex.App. 325, 17 S.W. 448.