Cruz **MARTINEZ, Jr.,** Appellant,

v.

The **STATE of Texas,** Appellee.

No. 50925.

Court of Criminal Appeals of Texas.

Feb. 11, 1976.

Norman Arnett, Rotan, for appellant.

Frank Ginzel, Dist. Atty., Colorado City, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of murder; the punishment is imprisonment for 11 years.

In several grounds of error the appellant asserts that reversal of the judgment is required because: (1) the evidence is insufficient to sustain his conviction; (2) the court erred in refusing to admit a statement made by Faustino Chapa before his death; (3) there was jury misconduct.

The appellant argues that peritonitis resulting from improper medical care was a concurring and intervening cause of the deceased's death; therefore, the evidence is insufficient to show beyond a reasonable doubt that the deceased's death was caused by a knife wound inflicted by the appellant.

The jury was instructed that:

"A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor was clearly insufficient." See V.T. C.A. Penal Code, Sec. 6.04(a).

Further, this instruction was applied to the facts of this case. A part of that instruction was that:

". . . and that conduct, if any, of Cruz Martinez, Jr. in cutting and stabbing the said Faustino Chapa with a knife, if he did, was clearly insufficient to produce the death of Faustino Chapa, or if you have a reasonable doubt thereof, then you should find the defendant not guilty of the offense of murder . ."

As evidenced by its verdict, the jury failed to find support in the evidence that peritonitis resulting from improper medical care was clearly the cause of the deceased's death and that the knife wound inflicted by the appellant was clearly insufficient to cause the deceased's death. We are unable to say that the jury's verdict is not supported by that evidence.

The evidence shows that Faustina Chapa was stabbed by the appellant at about 11:45 p. m. on Saturday, February 9, 1974; Chapa was taken to a hospital, and he died four days later.

Dr. C. M. Callan testified that the cause of the deceased's death was ". . . acute peritonitis, and shock, from infection, as a result of a stab wound that penetrated the bowel."

Dr. Callan also testified:

"Q. Then as I understand it, sir, and your testimony there appeared to be a knife wound in the colon, and that ultimately caused his death?

"A. Right."

Dr. Bill G. Brooks, a forensic pathologist, testified he performed an autopsy on the body of the deceased to ascertain the cause of death. He further testified:

"Q. All right. Thank you, Doctor. Doctor, can you tell us, and the jury here, the cause of death of Mr. Faustino Chapa, in sequence?

"A. . . . Now, we had a healthy man to start with. And he received stab wounds, one of which was inflicted in the right lower quadrant of the abdomen which penetrated the bowel. The patient then received medical care, and was operated upon. And, apparently, complications therefrom were fairly extensive. Now you have to appreciate the fact that once the bowel is penetrated, that the bacteria and the inconsequential organisms, provided they are obtained inside the bowel, escape into the abdominal cavity, and the result is called peritonitis— or irritation of the abdominal cavity, which can kill, and does. And it would appear to me that is what happened in this case: That the patient had a penetration of the bowel, this was treated unsuccessfully medically, and the patient died of peritonitis.

"Q. Doctor, would this be—this peritonitis, under these conditions—would this be a natural consequence of such a stab wound as you found here?

"A. Yes, sir."

We find that the jury's verdict is supported by sufficient evidence.

We next consider the appellant's contention that the testimony of Hortencia Yanez was erroneously excluded from evidence.

The witness Yanez visited Chapa in his hospital room between 6:00 and 7:00 p. m. on Sunday. Her testimony was: he was under medical treatment—he had tubes in him—Chapa was not delirious—he recognized me—he looked bad—said he felt bad and was thirsty—he didn't talk about pain—I asked him who had cut him—he told me it was Anasticio Campos and not Martinez. Yanez again visited Chapa in the hospital on Tuesday between 5:30 and 6:00 p. m. There was blood all over the linen, the pillow, and his gown; his feet were hanging off the bed. Chapa died between 1:00 and 1:30 a. m. on Wednesday.

The appellant argues that Yanez's testimony that Chapa told her he had been cut by Campos and not Martinez was admissible as an exception to the hearsay rule because it was either a dying declaration or a res gestae statement. We disagree.

The requirements for the admission of a dying declaration are statutory. Article 38.20, V.A.C.C.P. This statement does not qualify as a dying declaration under the provisions of the statute because the evidence does not show that at the time the alleged statement was made Chapa was conscious of approaching death and believed there was no hope for recovery. Cf. *Munoz v. State*, 524 S.W.2d 710 (Tex.Cr.App.1975).

Declarations relating to the circumstances of a violent crime, made by the victim shortly after its occurrence, are sometimes admitted in evidence as exceptions to the hearsay rule, upon the theory that the shock of the injury and the excitement of the moment have produced an utterance that is spontaneous and sincere as distinguished from one engendered by deliberation and design. Such statements may be admissible even when made in response to an inquiry or after an appreciable time has elapsed between the infliction of the injury and the making of the statement. The decisive factor is that the circumstances reasonably justify the conclusion that the remarks were not made under the impetus

of reflection. Whether this conclusion is justified depends upon the facts of each case and must be determined by the trial court in the exercise of sound judicial discretion. *United States v. Glenn*, 154 U.S. App.D.C. 61, 473 F.2d 191 (1972).

It has been said that three factors are necessary to bring a statement within this exception to the hearsay rule: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to contrive, misrepresent or fabricate; and (3) the statement must be related to the circumstances of the occurrence. See 6 Wigmore, Evidence, 3rd ed., Sec. 1750; *People v. Poland*, 22 Ill.2d 175, 174 N.E.2d 804 (1961); *State v. Urbauer*, 109 Ariz. 584, 514 P.2d 717 (1973); *People v. Tocco*, 60 Mich.App. 130, 230 N.W.2d 341 (1975).

■ Approximately eighteen hours elapsed between the startling event and the witness' conversation with Chapa. The evidence shows that Chapa had an opportunity to talk with and did talk with other persons during this time. In the circumstances here presented the spontaneity of the statement and the absence of time to contrive, misrepresent and fabricate have not been sufficiently shown that we would feel justified in overruling the trial judge who refused to admit the testimony. See *Allen v. State*, 488 S.W.2d 460 (Tex.Cr.App.1973) and cf. *Ricondo v. State*, 475 S.W.2d 793 (Tex.Cr.App.1971).

■ The last contention for our consideration is that of alleged jury misconduct. It is urged that the jury "went outside the evidence in violation of Article 40.03(7), V.A.C.C.P." in deliberating on the punishment which would be assessed.

This contention is based upon the affidavit of juror Bredemeyer which was attached to the motion for new trial and admitted in evidence on the hearing of that motion. The affidavit, in pertinent part, stated:

"When we, the jury, retired to consider the punishment of the Defendant, several of the jurors said that if we gave him less than ten years, then it would be left up to the Court to decide whether or not he would be placed on probation. I personally did not want him placed on probation but would not have assessed his punishment at more than eight years in the penitentiary. I felt that I had to vote for an eleven year sentence, otherwise the Court might have placed him on probation. One of the other jurors wanted to assess his punishment at only five years in the penitentiary, but voted for the eleven year term."

The affidavit does not show that the jury considered evidence not admitted; it does show that the jury may have been correctly informed that if it assessed a punishment of ten years or less the court could grant probation. Since this statement which was alleged to have been made was not a misstatement of the law no reversible error is shown. See *Heredia v. State*, 528 S.W.2d 847 (Tex.Cr.App.1975); *Howard v. State*, 505 S.W.2d 306 (Tex.Cr.App.1974); *Johnson v. State*, 418 S.W.2d 834 (Tex.Cr.App.1967).

It was juror Bredemeyer's prerogative as a juror to vote to assess a punishment which would prevent the appellant from receiving probation. He may not now impeach that verdict. *Frias v. State*, 169 Tex.Cr.R. 549, 335 S.W.2d 765 (1960). The affidavit does not show why the other unnamed juror decided to change his vote for imprisonment from five to eleven years. No jury misconduct has been shown.

The judgment is affirmed.

Opinion approved by the Court.