**Clarence Eugene TRAHAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–81–0113–CR.**

Court of Appeals of Texas,
Tyler.

March 17, 1983.

Leonard M. Roth, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

COLLEY, Justice.

Appellant was convicted of the offense of murder in a jury trial, and punishment was assessed at twenty-five (25) years confinement in the Texas Department of Corrections.

We affirm.

Leroy Justice, Jr., was a 55 year old blind man who resided at 3611 Hutchins, in the "Third Ward" area of Houston, Harris County, Texas. Living with him were Arthur Richardson and the owner of the home, H.B. Parker. Justice was in the habit of drinking alcohol on a daily basis outside the home with several friends. Appellant had participated in these drinking bouts for approximately six to eight months. Arthur Richardson testified that Justice could distinguish voices as he could not see to whom he was speaking, and referred to appellant by name, as he did with several persons, when speaking to him.

On July 6, 1978, Justice was engaged in drinking and talking with appellant, Richardson, and Elijah Hawkins outside the house. Richardson testified the only entrance used was the front entrance because the only other door, being on the side, was always locked because the trash was stacked outside that door. After drinking several hours, appellant entered the house on the pretense of using the bathroom. After about 20 to 30 minutes, Richardson entered the house and noticed appellant was asleep on one of the couches. He and Justice attempted to wake appellant, and as Richardson was leaving he heard what he believed to be Justice striking appellant with his walking cane to get him off the couch. Appellant and Justice remained alone in the house together for another 20 to 30 minutes before appellant exited the house and sat down for less than a minute before stating he had to use the bathroom again. Richardson watched appellant because the house was in his care and he didn't want appellant to go to sleep again inside. Just after appellant re-entered the house he told Richardson, "Slim [Richardson], Lee, Jr. [Justice] is bleeding." Richardson, Hawkins and Hawkins' wife, who had recently arrived, ran into the house and found Justice bleeding behind the left ear with a lump on his head and cut on his chin. Justice was groaning with pain and his pockets were turned out.

Richardson asked Justice who had hit him, and Justice replied, "Clarence did it." Justice told the other witnesses, "Clarence Trahan beat me up." When asked why, Justice said appellant must have thought Justice had money on him. Appellant responded, "I'm Clarence, but I didn't hit him," and "I didn't hit him." Appellant then left the house while Richardson attempted to stop the bleeding. After a few

hours the ambulance was called to the home, but Justice refused to go to the hospital. His wounds were dressed, and the attendants left. About an hour after the ambulance left, Richardson took Justice to the hospital because of the continued bleeding. Justice remained hospitalized at Ben Taub Hospital until he died on August 28, 1978, approximately 43 days later.

Appellant brings six grounds of error. The first ground is that the evidence is factually insufficient to sustain the conviction "in this, a circumstantial evidence case." The jury was charged on circumstantial evidence.

 Appellant attacks the sufficiency on the grounds that Justice was blind and that he knew another person named Clarence and argues that someone could have come into the house through the other door and assaulted Justice. Both Parker and Richardson testified the side door was continually kept locked, although neither had checked the door on that day prior to the incident. The door could only be locked from the inside and was found locked, after the incident, by Parker. Richardson testified that when appellant entered the house the second time and called to him for help, that appellant could not have been far enough in the house to see Justice. Appellant was only away from Justice for less than a minute during the time the assault could have been made on Justice. There was also testimony from several witnesses about appellant's demeanor in the house after the injury was discovered. He was described as looking away from the witnesses as Justice was accusing him of the assault/attempted robbery. Gracie Lewis, a nearby neighbor, testified she was watching the drinking from her kitchen window; that appellant entered the house followed later by Richardson and then Justice; that she then saw Richardson exit the house, and appellant come outside some time later, returning immediately back into the house; that she heard appellant crying out that Justice was injured and saw all the parties re-entering the house. She saw no one else enter or leave by the other door. The de-

fense attorney did manage to elicit the testimony from Lewis that she had not watched continually, but she responded she was so close and had such an unobstructed view that she would notice anyone going into the side door. We conclude under the record that the evidence is sufficient to support the conviction, and we overrule appellant's first ground of error.

Appellant contends that the trial court erred in allowing over his objection the "totally speculative testimony regarding the alleged murder weapon" by the expert witness, Dr. Ethel Erickson. Dr. Erickson, the Assistant Medical Examiner of Harris County, performed an autopsy on Justice and diagnosed that death occurred due to "bronchial pneumonia following the fractured skull." She testified Justice was undernourished, and weighed a little over a hundred pounds when he died. She testified both on direct and cross-examination that Justice would not have contracted the pneumonia and died if it were not for the skull fracture, which measured 2¾ inches, and brain damage, as a result of "blunt trauma," probably caused by a blunt instrument.

Dr. Erickson was excused from the stand, and another witness, Dr. Christian, testified that a 4 × 4 board, found at the scene of the beating, contained gray hairs with characteristics similar to those obtained from Justice's head. He testified that hairs were found in the board both in fragments which could have blown thereon, and in whole pieces with roots which were not merely blown onto the board but were imbedded therein. No blood was found on the board. It had been earlier testified by Richardson that he found the board under the T.V. set a few hours after he took Justice to the hospital; that he had not seen the board prior to the incident; and that he noticed the gray hair on it and kept the board until the detectives, later investigating the murder of Justice, investigated the scene of the incident. Dr. Erickson was recalled, and, based on a hypothetical concerning facts previously introduced about the 4 × 4, its having gray hairs on it and testimony that

the hairs were similar in characteristics to Justice's, testified, "I would strongly feel that this was the instrument that caused the fractured skull."

Appellant argues that Dr. Erickson's opinion "was based totally on conjecture," and insinuated that the State coached her to arrive at her conclusion. Dr. Erickson, qualified as a medical expert witness, rendered her opinion based on the facts she obtained in examining Justice during the autopsy and applying those facts to the hypothetical put to her on the stand. Although she testified on cross-examination that pneumonia could be caused by other factors which could weaken a person's resistance to bacteria, she stated that in the case of Leroy Justice, Jr., his pneumonia was a result of the skull fracture.

The Court of Criminal Appeals has "long allowed many types of testimony that spoke directly to an 'ultimate issue' in the case, e.g., 'medical testimony as to cause of death.'" *Mays v. State,* 563 S.W.2d 260, 263 (Tex.Cr.App.1978). In *Mays,* the objection also was that the witness's testimony was based on "speculation," and the court enunciated the criteria for expert testimony as set forth in *Hopkins v. State,* 480 S.W.2d 212 (Tex.Cr.App.1972): (1) the expert must be competent and qualified to testify; (2) the subject must be one upon which the aid of an expert opinion will be of assistance to the jury; and (3) the testimony may not state a legal conclusion. *Mays,* 563 S.W.2d at 264. In a case similar to this one it was proper for a doctor, who examined the wounds of an injured party and finding they were caused by a blunt instrument, to state that such wounds could have been inflicted by a piece of pipe exhibited to him. *Diaz v. State,* 147 Tex.Cr.R. 560, 182 S.W.2d 805, 807 (1944). The court stated, at 807, "It has long been the established rule of evidence that a physician who has examined and described a wound may express an opinion as to probable cause, nature and effect thereof." We perceive no error and therefore overrule appellant's second ground of error.

Appellant's third ground complains of the admission of hearsay statements of the deceased. These accusing statements have been detailed in the facts, as stated beforehand.

The statements are not admissible as dying declarations of Justice because there is an indication that he was not conscious of approaching death with no hope of recovery in that he refused to be hospitalized when the ambulance attendants first arrived. Art. 38.20, V.A.C.C.P. However, we believe the statements were admissible as "spontaneous exclamations," frequently referred to as "res gestae" or "excited utterances." *King v. State,* 631 S.W.2d 486 (Tex.Cr.App.1982).

Both parties point to the opinion of *Graham v. State,* 486 S.W.2d 92 (Tex.Cr.App. 1972), for the requirements needed to be met before evidence may be admitted under this exception. Those requirements are: (1) an exciting, emotionally stimulating or physically painful event; (2) the assertion [statement] must be made so soon after the occurrence that the declarant is still "in the emotional grip of the shocking event"; and (3) the evidence must relate to the event. *Id.* at 94–95. Appellant complains that the time period between the possible time of the injury and when the statements were made renders them inadmissible. As to the time element, the second factor above has been said to mean the time should not be so long to allow for time to "contrive, misrepresent or fabricate" the statements after reflection. *Martinez v. State,* 533 S.W.2d 20, 23 (Tex.Cr.App.1976), and authorities cited therein. *Martinez* held that a period of 18 hours, along with opportunities the victim had to discuss the incident, were sufficient factors for the judge to refuse to admit the testimony. *Id.* In the case before us, however, the time period was less than 30 minutes, perhaps within a very short period of time of injury. Appellant was present with Justice for 20 to 30 minutes, left him for less than one minute and then, upon re-entering the house, cried out he was bleeding. In addition, the witnesses testified Justice was in pain and barely able

to speak. Therefore the second requirement of *Graham, supra,* was satisfied.

■ The fact that the declarant made his statements in response to questions, not leading in nature, is only a factor to be considered with the other circumstances available. 1A. *Ray,* Tex.Evidence, 3rd ed., Sec. 914, p. 155. The questions asked of Justice were not leading in nature; Justice was in obvious pain and injury and also a blind man who needed his cane to move about. Judge Clinton stated that remarks such as "What happened?," affect only the weight and not the admissibility of the reply. *King, supra,* 631 S.W.2d at 494. In *King,* a murder was committed in the "Third Ward" area of Houston (the same neighborhood in this case) of a man as his abductors were intending to rape, and did so incessantly, the man's woman companion. The woman complainant was so hysterical that, when asked what happened, she told officers of the murder and rapes. This was more than an hour after the crime occurred. In responding to complaints that questions were first asked, Judge Clinton wrote that "... statements made while in the grip of ... pain, and which relate to the exciting event, are admissible under the rationale that the capacity for reflection necessary to fabrication is lost." *Id.* at 491.

Considering all the circumstances, we find the trial court did not abuse its discretion in admitting the incriminating spontaneous exclamations of the decedent Justice. The third ground is therefore overruled.

■ Appellant's fourth ground of error raises for the first time on appeal his complaint of the definition of "intentional" or "intent" as given in the court's charge. No objection was made at trial and nothing is preserved for review. Article 36.14, V.A.C. C.P. However, we have examined the challenged definition and find it correct under Section 6.03(a), Texas Penal Code. The fourth ground is overruled.

Appellant's fifth ground of error refers to a charge of improper jury argument by the prosecutor, alleging he made a comment on the appellant's failure to testify.

The following argument is shown in the record:

"... my position is that based on the evidence that you heard, you heard no other reasonable hypothesis. There was only one reasonable hypothesis offered to you, and that is, is that man is guilty
....
Mr. Roth: Your Honor, I object to that last testimony; he is again arguing that the Defense has to bring up some other hypothesis. He must exclude every other hypothesis."

■ Under the state of the law at the time of trial, every other reasonable hypothesis except that of the guilt of the accused had to be excluded. *Vaughn v. State,* 607 S.W.2d 914, 921 (Tex.Cr.App. 1980). We read the prosecutor's argument to mean that not only were other reasonable hypothesis excluded, there were no other reasonable hypothesis raised. Appellant's attorney attempted to raise the possibility during trial that a third person could have entered the house and assaulted Justice. This was refuted by testimony that the side door was always kept locked, Gracie Lewis saw no one enter or exit that door and the fact that appellant was placed with Justice for all but less than a minute. Finding no error, we overrule appellant's fifth ground of error.

■ Appellant's sixth and final ground of error is that the prosecutor referred to the unproven, extraneous offense of attempted robbery in his final argument. He stated,

"... now, the blind man knew he got hit. How is he going to tell you what hit him? He knew the man hit him, obviously he knew that because he told someone, someone was trying to take his money. He knew Clarence hit him and was trying to take his money from him. Can you imagine somebody hitting a blind man?"

The jury had before it evidence that Justice's pockets were turned out and Justice told the witnesses that the appellant tried to take money from him before striking him. The jury could properly consider this

evidence as motive for the crime, and the evidence is admissible for that purpose. *Garcia v. State*, 495 S.W.2d 257 (Tex.Cr. App.1973); *Porter v. State*, 623 S.W.2d 374 (Tex.Cr.App.1981). Therefore this sixth ground of error is overruled.

Finding no error, the judgment of the trial court is hereby affirmed.