Gary MARTIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10-90-077-CR.

Court of Appeals of Texas,
Waco.

Jan. 15, 1992.

William F. Carter, Madisonville, for appellant.

David S. Barron, Anderson, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

Appellant was convicted of possession of over five pounds of marihuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121 (Vernon 1992). He complains that the evidence was insufficient to support his conviction and that the court erred when it admitted evidence concerning the value of the marihuana and an alleged extraneous offense. Other points relate to the denial of a motion to suppress the marihuana as evidence and the denial of a motion for a new trial. We will affirm.

▮▮▮ Appellant's eighth point is that the evidence was insufficient to support his conviction. To establish unlawful possession of a controlled substance, the state must prove beyond a reasonable doubt that the defendant exercised care, custody, control, and management over the contraband and that he knew it was contraband. *Dickey v. State*, 693 S.W.2d 386, 389 (Tex.Crim. App.1984). The question is whether, viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989).

Officer Cannon testified that on July 17, 1989, police officers executing a search warrant found approximately 425 marihuana plants, approximately six to seven feet tall, growing on John Henry Faulk's property. The land was leased to Julius Martin, Appellant's uncle. The plants were growing in holes which appeared to have been made by an auger. Officers pulled up the plants and transported them to the "drunk tank" at the jail, where they removed the leaves, packaged them, and sent them to be tested at the lab. Charles Mott, the chemist who supervised the testing, claimed that the mature marihuana weighed just over thirty-two pounds. Sheriff Neely said that based on his experience marihuana grew to a height of six feet between four and five months after being planted.

Brent Martin, Appellant's son, testified that his father asked him to borrow a tractor and auger from his grandfather in March 1989—i.e., approximately four months before the search warrant was executed. Brent and his cousin, David Martin, picked up the tractor and auger from their grandfather's home and took them to David's house. Brent showed Appellant how to operate the auger and watched his father drive the tractor away toward John Henry Faulk's land. Later that day, Brent and his sister, Crystal, followed the tractor's tracks to the Faulk property. There, in a clearing, they discovered the tractor—which now had a broken auger—and over 160 holes made by the auger.

During his investigation, Cannon questioned both Brent and David about the marihuana. When they approached Appellant and told him they had been questioned by the police, he responded, "Just tell [the police] it's my dope. Tell them if they want to talk to me, to come talk to me." Crystal also testified that, shortly before the marihuana was discovered, her father, who had been unemployed for some time, said he was expecting some money in August and promised to buy her a car and Brent a truck. Furthermore, the Sunday before trial, Terry Baker, Pat Thompson, and Cannon all overheard a conversation between Appellant and another person. They heard Appellant say that he would have the money he owed, "but [Cannon] pulled up my marihuana."

Based on this evidence and the record as a whole, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. *See id.* Point eight is overruled.

■ Sheriff Neely testified that the "street value" of marihuana is approximately $1000 a pound. Thus, he concluded that the marihuana in this case was worth approximately $31,000. Appellant objected that the testimony was irrelevant, or, if relevant, that its probative value was outweighed by its prejudicial effect. In points four and five he complains that the court erred when it allowed the testimony about the marihuana's value.

The Court of Criminal Appeals has determined that, in cases involving the possession of marihuana, the value of the marihuana is admissible. *See, e.g., Wilkerson v. State,* 736 S.W.2d 656, 662 (Tex.Crim. App.1987); *Kemner v. State,* 589 S.W.2d 403, 406 (Tex.Crim.App.1979); *Castro v. State,* 432 S.W.2d 948, 949–50 (Tex.Crim. App.1968). Such evidence "has a relevance and materiality" because it allows the jury to comprehend the amount of the contraband in terms that are easily understood. *Thibeadeau v. State,* 739 S.W.2d 482, 485 (Tex.App.–Beaumont 1987), *vacated,* 761 S.W.2d 22 (1988), *on remand,* 765 S.W.2d 538 (1989). Furthermore, in light of Crystal's testimony—i.e., that Appellant was expecting to receive money in August and would buy her a car and Brent a truck but that he never bought the vehicles—the value of the marihuana was relevant to show Appellant's motive for growing the marihuana as well as his control and management over it. *See* TEX.R.CRIM.EVID. 401, 402. Furthermore, the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *See id.* at 403. We overrule points three and four.

■ Appellant argues in points six and seven that the court erred when it allowed, over relevancy and extraneous-offense objections, testimony concerning the posses-

sion of machine guns. Specifically, he complains about this portion of Brent's testimony:

BY [PROSECUTOR]:

Q  Brent, I believe you last testified that [Appellant] last told you he was out at [the Faulk] place, I believe, three days before this marihuana was pulled up with two other people?

A  I believe that's what he said.

Q  Did he say whether they had anything with them at that time?

.     .     .     .     .

Q  (By [Prosecutor]) What did he tell you about that?

A  What did he tell me about what?

Q  What they had with them.

A  He said they had some machine guns with them.

This testimony seems to imply that Appellant committed an extraneous offense—possession of a machine gun. *See* TEX.PENAL CODE ANN. § 46.06(a)(2) (Vernon Supp. 1992). However, the following testimony of David Martin suggests that the other men, and not Appellant, possessed machine guns:

Q  [By Prosecutor] At any time do you remember [Appellant] talking about being out at [the Faulk] place with anybody else?

A  Yeah.... it came up about the deputy being over there; and [Appellant] said, "Well, the two guys that I was there with had machine guns. They didn't want to meet up with us."

.     .     .     .     .

Q  ... Did [Appellant] tell you what time or when he had been out there with the men with machine guns, how close in time to the time when the marijuana was pulled up?  Did he—

A  Well, I don't actually remember when the stuff was pulled up. [Appellant] just said we was out there the night before.

■  Evidence of an extraneous offense necessarily involves evidence of prior criminal conduct. *Harris v. State*, 738 S.W.2d 207, 224 (Tex.Crim.App.1987) (on rehearing), *cert. denied*, 484 U.S. 872, 108

S.Ct. 207, 98 L.Ed.2d 158 (1987). Thus, "if the evidence fails to show that an offense was committed or that the defendant was connected to the offense, then evidence of an extraneous offense is not established." *Id.*  Because the jury could have reasonably believed from David's testimony that the other men, and not Appellant, had machine guns, the evidence did not concern an extraneous offense. Furthermore, the evidence was relevant to show Appellant's control over the marihuana and his knowledge that it was marihuana. *See* TEX. R.CRIM.EVID. 401, 402, 404(b); *also Wilson v. State*, 495 S.W.2d 927, 929 (Tex.Crim. App.1973). Points six and seven are overruled.

■  Appellant's ninth, tenth, and eleventh points concern the denial of his motion to suppress the marihuana as evidence. He complains that the warrant was not based on probable cause and that the information made the basis for the warrant was obtained during an illegal warrantless search.

To complain about the legality of a search and seizure, a defendant must show a reasonable expectation of privacy in the place searched. *Goehring v. State*, 627 S.W.2d 159, 164 (Tex.Crim.App. [Panel Op.] 1982). Appellant failed to show that he had any proprietary or possessory interest in the Faulk property, which was leased to his uncle. Therefore, he cannot complain about the search and seizure. Points nine through eleven are overruled.

■  Finally, Appellant's first three points are that the court erred when it denied his motion for a new trial. He alleges that the jury's discussion of probation during its deliberations at the punishment stage constituted the receipt of "other evidence" and denied him a fair and impartial trial. *See* TEX.R.APP.P. 30(b)(7); U.S. CONST. amend. VI. Attached to his motion for a new trial was the following affidavit from juror Spiller:

... during the deliberation at the punishment stage of the trial one of the jurors, a Mr. Scudder, as I recall, who worked at the Texas Department of Cor-

rections made a statement to the jurors that if [Appellant] was assessed a sentence of ten (10) years or less that he could be given probation by the judge. None of the jurors disputed this particular statement nor did I. This juror, Mr. Scudder, acted as if he knew that this was the law and the other jurors relied upon these statements concerning probation. Some members of the jury wanted to assess punishment at less than ten (10) years, however, because of the statements made by one of the jurors relating to [Appellant] being able to get probation if his punishment was ten (10) years or less, these jurors assessed a harsher punishment. It was determined to assess the punishment of [Appellant] at one year above ten (10) in order to insure that he would not get probation from the judge. Therefore, we assessed a sentence of eleven (11) years in prison. After the statement by Mr. Scudder and other members of the jury regarding the punishment being greater than ten (10) years the jurors did not consider any time of ten (10) years or less. I would have given less than eleven (11) years if not for the statements of the juror, Mr. Scudder, and other members of the jury.

▮ Jurors are incompetent to impeach their verdict by affidavit or testimony about their mental process during deliberations. TEX.R.CRIM.EVID. 606(b). They may, however, testify as to any matter relevant to the validity of the verdict or indictment. *Id.* A matter is relevant to the validity of the verdict or indictment if it concerns an overt act which constitutes jury misconduct under Rule 30(b) of the Rules of Appellate Procedure. *Brown v. State*, 804 S.W.2d 566, 569 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). Rule 30(b) lists jury misconduct as,

> Where after retiring to deliberate the jury has received other evidence; or where a juror has conversed with any other person in regard to the case; or where a juror became so intoxicated as to render it probable that his verdict was influenced thereby; [or] [w]here the court finds the jury has engaged in such

misconduct that the accused has not received a fair and impartial trial.

TEX.R.APP.P. 30(b)(7), (8). Therefore, we must decide whether Spiller's affidavit and testimony at the hearing on the motion for a new trial concerned an overt act which constituted jury misconduct under Rule 30(b).

Whenever a defendant receives a sentence of ten years or less, the court may place him on probation. TEX.CODE CRIM. PROC.ANN. art. 42.12 § 3 (Vernon Supp. 1992). Likewise, if a defendant receives a sentence of ten years or less and files a written, sworn motion before trial requesting that the jury recommend probation, he is entitled to have the jury consider whether his sentence should be probated. *Id.* at art. 42.12 § 4(a). A jury's recommendation that probation be granted is binding on the court. *Id.* However, a court may grant probation in a case even if "the jury in the case does not recommend probation." *Id.* at art. 42.12 § 4(c).

> As part of its charge on punishment, the court informed the jury:
>
> [I]f the punishment assessed by you is not more than ten years confinement in [prison], and if you further find that [Appellant] has never been convicted of a felony ... you may in your discretion cause [him] to be given probation herein. If you desire [Appellant] to be placed on probation, let your verdict show that you find that [he] has never been convicted of a felony ... and further show that you recommend probation.

Although the jury apparently agreed that it would not recommend probation, its discussion about probation—i.e., that if they "assessed a sentence of ten (10) years or less that [Appellant] could be given probation by the judge"—was not a misstatement of the law. *See Martinez v. State*, 533 S.W.2d 20, 23 (Tex.Crim.App.1976); TEX. CODE CRIM.PROC.ANN. art. 42.12 § 4(c) (Vernon Supp.1992).

As a juror, Spiller could vote to assess a punishment which would prevent Appellant from receiving probation. *See Martinez*, 533 S.W.2d at 23. She may not now impeach that verdict. *See id.* Accordingly,

we hold that Spiller's affidavit and testimony at the hearing on the motion for a new trial were not relevant to the validity of the verdict or indictment. *See* TEX.R.CRIM. EVID. 606(b). The first three points are overruled.

We affirm the judgment.