Toluao v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-040-CR

DON LEE TOLUAO APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Don Lee Toluao appeals from his conviction for capital murder.  In eight points, appellants complains that the trial court erred by limiting his questioning of two witnesses, failing to appoint him a second attorney, improperly charging the jury regarding reasonable doubt and the law of parties, and overruling his objection to hearsay.  We affirm.

In his first and second points, appellant contends that the trial court violated his state and federal rights to confront and cross-examine witnesses and to due process, as well as evidentiary rules 404 and 405, by refusing to allow him to question a State rebuttal witness about the propensity of his “codefendant,” Bobby Hughes, towards violence. 

Appellant asserts that rule 404(a)(1)(A) is the “key” to his constitutional and evidentiary complaints.  Rule 404(a)(1)(A) provides for the admission of evidence of a pertinent character trait offered by an accused in a criminal case.
(footnote: 2)  Appellant asserts that this rule required the trial court to admit evidence regarding Hughes’s character because Hughes “was clearly a co-defendant under the State’s theory of the case” and was therefore an accused in a criminal case.
(footnote: 3) 

We review the trial court’s exclusion of evidence under an abuse of discretion standard.
(footnote: 4)  A trial court does not abuse its discretion unless its ruling is arbitrary and unreasonable and therefore falls outside the zone of reasonable disagreement.
(footnote: 5) The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred.
(footnote: 6) 

Rule 404(a)(1)(A) permits an accused to offer evidence only of his own character, not of someone else’s.
(footnote: 7)  Accordingly, because appellant sought to introduce evidence of Hughes’s character, rather than his own, the trial court did not abuse its discretion or violate appellant’s constitutional rights by excluding the evidence.
(footnote: 8)  We overrule appellant’s first two points.

Appellant was convicted of murdering Lamar Moore while robbing him. In his third and fourth points, appellant complains that the trial court violated his state and federal rights to confront and cross-examine witnesses and to due process, as well as evidentiary rule 613, by refusing to allow him to question Gregory Powell, a State witness, about whether the intimidating conduct of Moore’s friends immediately after Moore’s murder could have influenced Powell to testify in a manner that would result in appellant’s conviction. 

The Sixth Amendment protects a defendant’s right to cross-examine a witness regarding bias or motive.
(footnote: 9)  Likewise, Texas Rule of Evidence 613 allows the impeachment of a witness by proof of circumstances or statements showing his bias or interest.
(footnote: 10)  Therefore, a defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify.
(footnote: 11)  The proponent of such evidence must, however, demonstrate that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party.
(footnote: 12)
 In this case, Powell testified on direct examination as follows:

Powell and his sister, Jesuita Warren, lived with their mother and brother. Hughes, Warren’s boyfriend, also stayed with them for several months. Appellant, Hughes, and others attended a barbecue at Powell’s home on the night before Moore’s death.  During that time, Powell saw appellant and Hughes huddled in conversation.  When appellant stood up at one point, Powell noticed that appellant had an automatic pistol at his side. 

Outside the jury’s presence, Powell further testified as follows:

On the Saturday and Sunday following Moore’s death,
(footnote: 13) a group of Moore’s armed “homeboys” went several times to Powell and Warren’s home, demanding answers regarding what had happened to Moore and looking for the person responsible for his disappearance.  The men were polite, but they had guns visible (including Tec-9s and what appeared to be an Uzi), and they wanted answers.  Powell testified that he could not blame them and probably would have done the same thing in their situation.  

The men wanted Powell and Warren to go with them, and on Sunday they said that they would not let Warren out of their sight until they found Hughes.  Powell refused to go with the group and stayed home.  Warren went with the men on both Saturday and Sunday.  Powell and Warren had nothing to hide and were trying to help the men as much as they could. 

Powell was called as a trial witness over two years after these events.  He had moved from the community but still saw the men “every now and then” on the streets.  He denied being afraid of the men, stated that the events of October 2001 did not influence his testimony, and claimed that he did not know Moore’s family or friends and had no bias towards them. 

Based on this evidence, the trial court reasonably could have determined that appellant failed to demonstrate a nexus between Powell’s trial testimony and his potential motive to testify in favor of the State.  The intimidation exerted by Moore’s “homeboys” was related to their efforts to find Moore and the person responsible for his disappearance—and the whereabouts of Hughes, in particular.  There is no evidence that, in the intervening two years between Moore’s death and appellant’s trial, the men had contacted Powell or attempted to persuade him to testify against appellant.

Further, Powell did not witness the murder, nor did he testify that appellant murdered Moore or had anything to do with the murder.  His testimony regarding appellant was limited to two circumstantial facts—that he observed appellant huddled in conversation with Hughes the night before Moore’s murder and noticed that appellant was armed.

For all of these reasons, we hold that the trial court did not abuse its discretion
(footnote: 14) by limiting appellant’s questioning of Powell or violate appellant’s constitutional rights.  Consequently, we overrule appellant’s third and fourth points.

In his sixth point,
(footnote: 15) appellant contends that the trial court improperly overruled his objection to the court’s instruction regarding reasonable doubt in the jury charge.  Appellant asserts that this ruling violated his state and federal constitutional rights to due process and due course of law, respectively. Appellant concedes, however, that we have previously considered and rejected this argument.
(footnote: 16)  Accordingly, we overrule appellant’s sixth point.

In his seventh point, appellant asserts that the trial court improperly overruled his objection to the jury charge on the law of parties because the evidence does not support a parties charge and could have resulted in a “nonunanimous” verdict based on some jurors’ belief that appellant shot Moore and other jurors’ belief that Hughes was the shooter.  Specifically, appellant complains of the following portion of the charge’s application paragraph:

If you find from the evidence beyond a reasonable doubt that on or about the 12th day of October, 2001 in Tarrant County, Texas, that Bobby Hughes did then and there intentionally cause the death of an individual, Lamar Moore, by shooting him with a firearm, and the said Bobby Hughes was then and there in the course of committing or attempting to commit the offense of robbery of Lamar Moore, and the Defendant, Don Lee Toluao, acting with intent to promote or assist the commission of the offense of capital murder, solicited, encouraged, directed, aided or attempted to aid Bobby Hughes to commit said capital murder, then you will find the Defendant guilty of the offense of capital murder, as charged in the indictment. 

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
(footnote: 17)  A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.
(footnote: 18)  Each party to an offense may be charged with commission of the offense.
(footnote: 19)
 The trial court is required to instruct the jury on the law applicable to the case.
(footnote: 20)  When the evidence is sufficient to support both primary and party theories of liability, the trial court does not err by instructing the jury that it may convict the defendant either as a principal or as a party,
(footnote: 21) even if there is no allegation of party liability in the indictment.
(footnote: 22)  Further, jury unanimity regarding the defendant’s liability as a principal or as a party is not required, as long as the jury unanimously agrees that the defendant committed the same offense.
(footnote: 23)
 In determining whether the accused participated as a party, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to do the prohibited act.
(footnote: 24)  Circumstantial evidence may be used to prove party status.
(footnote: 25)
 In this case, the record shows as follows:

Appellant was at a barbeque at 1201 Marion Street the night before Moore’s murder.  He was armed and huddled in conversation with Hughes.  Warren and Kierian McDowell, who were also present at the barbeque, heard the two men discussing robbing someone.  The next morning, McDowell heard a gunshot in the garage at 1201 Marion and looked inside to see Moore lying on the floor, appellant holding a gun, and Hughes taking a “wad” of money from Moore’s jacket. 
 Appellant threatened to kill McDowell if he did not help them.  Appellant wrapped Moore’s bleeding head in a blanket, and Hughes and McDowell helped appellant load Moore’s body into Moore’s Suburban. Appellant, Hughes, and McDowell then disposed of Moore’s body in some bushes behind a church at the end of Marion Street. 

The jury could have concluded from this evidence that appellant shot Moore while robbing or attempting to rob him or that Hughes shot Moore and then gave the gun to appellant so that Hughes could clean out Moore’s pockets.  Therefore, the evidence is sufficient to support both primary and party theories of liability,
(footnote: 26) and the trial court did not err
(footnote: 27) by charging the jury on the law of parties.
(footnote: 28)  We overrule appellant’s seventh point.

In his eighth point, appellant complains that the trial court improperly overruled his hearsay objection to the following portion of Jesuita Warren’s testimony:

[PROSECUTOR]:  Did Frog advise [you] that—that is Frog, Bobby Hughes—advise that he was meeting Lamar Friday morning to bond out Trey, Bryant Sheffield?

. . . .

[WARREN]:  Yes. 

Appellant contends that the admission of the above hearsay harmed him because part of the State’s theory of the case was that Hughes talked Moore into meeting him with money on the morning of the murder under the pretext of bonding Sheffield out of jail.  Appellant asserts that Warren’s testimony “may have been the piece of the puzzle that tipped the scales in the eyes of the jurors against Appellant.”  The State argues that, even if the trial court improperly overruled appellant’s hearsay objection, the error was harmless. The admission of inadmissible hearsay is a nonconstitutional error; therefore, we are to disregard the error unless it affected appellant's substantial rights.
(footnote: 29)  
A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury’s verdict.
(footnote: 30)  In making this determination, we review the record as a whole.
(footnote: 31) 

In this case, the testimony about which appellant complains is relatively insignificant.  It is limited to a single comment that does not mention appellant and does not, by itself, tend to implicate him in the charged offense.  Appellant’s defensive theory was that Hughes and McDowell committed the crime and then drove to Dallas in Moore’s Suburban, where they happened to see appellant, who had been in Dallas since the day before the murder occurred.  Warren’s testimony is not inconsistent with appellant’s theory; the testimony only refers to Hughes’s alleged statement about 
Hughes’s
 plans.

Further, other evidence presented at trial, which we have previously discussed, established that appellant helped to plan the offense and that he shot Moore.  In addition, hotel records and other evidence showed that, on the day before Moore’s murder, appellant made a reservation at the Budget Inn Suites in Dallas, where he spent the night following the murder with Hughes and McDowell.  Finally, there is evidence that appellant, Hughes, and McDowell went shopping with $1300 that Hughes had taken from Moore’s pocket and that appellant was wearing Moore’s jewelry when he was arrested several weeks later in California. 

We conclude that, in the context of the entire case against appellant, the trial court’s alleged error in admitting Warren’s testimony did not have a substantial or injurious effect on the jury’s verdict and did not affect appellant’s substantial rights.
(footnote: 32)  Thus, we disregard the error, if any.
(footnote: 33)  We overrule appellant’s eighth point.

Having overruled all appellant’s points, we affirm the trial court’s judgment.

PER CURIAM

PANEL F: CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED: August 18, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Tex. R. Evid.
 404(a)(1)(A).  This rule provides:

Evidence of a person’s character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

(1)  
Character of accused.
  Evidence of a pertinent character trait offered:

(A) by an accused in a criminal case . . . [.]

Id.

3:
Appellant asserts that both sides agree that Hughes was present when the murder took place but disagree as to his role in it. 

4:
Burden v. State,
 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

5:
Manning v. State,
 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). 

6:
Id.

7:
See U.S. v. Wright,
 363 F.3d 237, 247 & n.3 (3rd Cir. 2004) (applying 
Fed. R. Evid.
 404(a)(1), which is virtually identical to 
Tex. R. Evid.
 404(a)(1)(A)), 
petition for cert. filed,
 ___ U.S.L.W. ___ (July 2, 2004) (No. 04-5173); 
see also
 
Fed. R. Evid.
 404 advisory comm. notes to 1972 proposed rules (West 2001) (noting that federal rule 404(a)(1) codified deeply rooted common-law rule that permitted criminal defendant to introduce pertinent evidence of 
his
 good character); 
Castaldo v. State,
 78 S.W.3d 345, 349 (Tex. Crim. App. 2002) (stating that Texas rule 404 uses “accused” in same way as its federal counterpart).

8:
Appellant’s reliance on 
Martin v. State,
 823 S.W.2d 726, 729 (Tex. App.—Waco 1992, pet. ref’d) and 
Salazar v. State
, 805 S.W.2d 538, 541 (Tex. App.—Fort Worth 1991, pet. ref’d) is misplaced because those cases involved evidence of crimes, wrongs, or bad acts of third parties—which were not offered in those cases and are not admissible to prove an accused’s character.  
See
 
Tex. R. Evid.
 404(b); 
Castaldo,
 78 S.W.3d at 349 (“Rule 404(b) expresses a prohibition against using evidence of acts to prove character, even when character is at issue under one of the three exceptions in [rule] 404(a).”)  Appellant does not contend that Hughes’s character is an essential element of a charge, claim, or defense in this case.  
See
 
Tex. R. Evid.
 405(b).

9:
Davis v. Alaska,
 415 U.S. 308, 315-17, 94 S. Ct. 1105, 1110-11 (1974).

10:
Tex. R. Evid.
 613(b).

11:
Carpenter v. State,
 979 S.W.2d 633, 634 (Tex. Crim. App. 1998); 
Carroll v. State,
 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).

12:
Woods v. State,
 152 S.W.3d 105, 111 (Tex. Crim. App. 2004), 
cert. denied,
 125 S. Ct. 2295 (2005).

13:
Moore was murdered on a Friday. 

14:
See
 
Manning,
 114 S.W.3d at 926;
 Burden,
 55 S.W.3d at 615.

15:
Appellant’s fifth point, in which he complains of the trial court’s failure to appoint him a second defense attorney between the time of his indictment and the State’s waiver of the death penalty, 
see
 
Tex. Code Crim. Proc. Ann.
 art. 26.052(e) (Vernon Supp. 2004-05), is forfeited because he did not raise it below.  
See
 
Tex. R. App. P.
 33.1(a).

16:
See Minor v. State,
 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002, pet. ref’d).  After appellant’s brief was filed, the court of criminal appeals also held that the jury instruction of which appellant complains is not an abuse of discretion.  
Woods,
 152 S.W.3d at 115.

17:
Tex. Penal Code Ann.
 § 7.01(a) (Vernon 2003).

18:
Id.
 § 7.02(a)(2).

19:
Id.
 § 7.01(b).

20:
Tex. Code Crim. Proc. Ann.
 art. 36.14 (Vernon Supp. 2004-05).

21:
Ransom v. State,
 920 S.W.2d 288, 302 (Tex. Crim. App. 1994), 
cert. denied,
 519 U.S. 1030 (1996); 
Hanson v. State,
 55 S.W.3d 681, 694 (Tex. App.—Austin 2001, pet. ref’d) (citing 
Goff v. State,
 598 S.W.2d 624, 629 (Tex. Crim. App. 1979)).

22:
Montoya v. State,
 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), 
cert. denied,
 502 U.S. 961 (1991).

23:
See
 
Sanchez v. State,
 813 S.W.2d 610, 612 (Tex. App.—Houston [1st Dist.] 1991, pet. ref’d) (rejecting appellant’s argument that inclusion of parties charge improperly gave State advantage of obtaining conviction under either principal or party liability theory); 
see also
 
Kitchens v. State,
 823 S.W.2d 256, 258 (Tex. Crim. App. 1991) (noting that “there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict”); 
Hanson,
 55 S.W.3d at 694 (“[I]f a jury is authorized to convict a defendant on a finding that he committed a single offense in either of two different ways, the jury need not unanimously agree as to which method of commission the defendant actually employed.”).

24:
Ransom,
 920 S.W.2d at 302.

25:
Id.

26:
See Ransom,
 920 S.W.2d at 302; 
Sanchez,
 813 S.W.2d at 612.

27:
See Abdnor v. State,
 871 S.W.2d 726, 731 (Tex. Crim. App. 1994) (setting out standard for reviewing alleged charge error). 

28:
Savant v. State
, 544 S.W.2d 408 (Tex. Crim. App. 1976), on which appellant relies, is inapposite.  The 
Savant
 court held that there was no evidence that the appellant had been acting as anything other than a principal. 
See id.
 at 409.

29:
See
 
Tex. R. App. P.
 44.2(b); 
Moon v. State,
 44 S.W.3d 589, 594-95 (Tex. App.—Fort Worth 2001, pet. ref’d).

30:
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing 
Kotteakos v. United States
, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); 
Coggeshall v. State,
 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref’d).

31:
See Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

32:
See King
, 953 S.W.2d at 271.

33:
See
 
Tex. R. App. P.
 44.2(b); 
see also 
Guidry v. State,
 9 S.W.3d 133, 151-52 (Tex. Crim. App. 1999)
 (holding admission of hearsay harmless when it was just a small part of
 comprehensive evidentiary picture), 
cert. denied,
 531 U.S. 837 (2000).