COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH


NO. 2-04-040-CR


DON LEE TOLUAO                                                                 APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION [1]

------------
        Don Lee Toluao appeals from his conviction for capital murder. In eight
points, appellants complains that the trial court erred by limiting his questioning
of two witnesses, failing to appoint him a second attorney, improperly charging
the jury regarding reasonable doubt and the law of parties, and overruling his
objection to hearsay. We affirm.
        In his first and second points, appellant contends that the trial court
violated his state and federal rights to confront and cross-examine witnesses
and to due process, as well as evidentiary rules 404 and 405, by refusing to
allow him to question a State rebuttal witness about the propensity of his
“codefendant,” Bobby Hughes, towards violence. 
        Appellant asserts that rule 404(a)(1)(A) is the “key” to his constitutional
and evidentiary complaints. Rule 404(a)(1)(A) provides for the admission of
evidence of a pertinent character trait offered by an accused in a criminal
case. [2] Appellant asserts that this rule required the trial court to admit evidence
regarding Hughes’s character because Hughes “was clearly a co-defendant
under the State’s theory of the case” and was therefore an accused in a
criminal case. [3] 
        We review the trial court’s exclusion of evidence under an abuse of
discretion standard. [4] A trial court does not abuse its discretion unless its ruling
is arbitrary and unreasonable and therefore falls outside the zone of reasonable
disagreement. [5] The mere fact that a trial court may decide a matter within its
discretionary authority in a different manner than an appellate court would in
a similar circumstance does not demonstrate that an abuse of discretion has
occurred. [6] 
        Rule 404(a)(1)(A) permits an accused to offer evidence only of his own
character, not of someone else’s. [7] Accordingly, because appellant sought to
introduce evidence of Hughes’s character, rather than his own, the trial court
did not abuse its discretion or violate appellant’s constitutional rights by
excluding the evidence. [8] We overrule appellant’s first two points.
        Appellant was convicted of murdering Lamar Moore while robbing him.
In his third and fourth points, appellant complains that the trial court violated
his state and federal rights to confront and cross-examine witnesses and to due
process, as well as evidentiary rule 613, by refusing to allow him to question
Gregory Powell, a State witness, about whether the intimidating conduct of
Moore’s friends immediately after Moore’s murder could have influenced Powell
to testify in a manner that would result in appellant’s conviction. 
        The Sixth Amendment protects a defendant’s right to cross-examine a
witness regarding bias or motive. [9] Likewise, Texas Rule of Evidence 613
allows the impeachment of a witness by proof of circumstances or statements
showing his bias or interest. [10] Therefore, a defendant is entitled to pursue all
avenues of cross-examination reasonably calculated to expose a motive, bias,
or interest for the witness to testify. [11] The proponent of such evidence must,
however, demonstrate that a nexus, or logical connection, exists between the
witness's testimony and the witness's potential motive to testify in favor of the
other party. [12]
        In this case, Powell testified on direct examination as follows:
        Powell and his sister, Jesuita Warren, lived with their mother and brother.
Hughes, Warren’s boyfriend, also stayed with them for several months.
Appellant, Hughes, and others attended a barbecue at Powell’s home on the
night before Moore’s death. During that time, Powell saw appellant and
Hughes huddled in conversation. When appellant stood up at one point, Powell
noticed that appellant had an automatic pistol at his side. 
        Outside the jury’s presence, Powell further testified as follows:
        On the Saturday and Sunday following Moore’s death, [13] a group of
Moore’s armed “homeboys” went several times to Powell and Warren’s home,
demanding answers regarding what had happened to Moore and looking for the
person responsible for his disappearance. The men were polite, but they had
guns visible (including Tec-9s and what appeared to be an Uzi), and they
wanted answers. Powell testified that he could not blame them and probably
would have done the same thing in their situation. 
        The men wanted Powell and Warren to go with them, and on Sunday
they said that they would not let Warren out of their sight until they found
Hughes. Powell refused to go with the group and stayed home. Warren went
with the men on both Saturday and Sunday. Powell and Warren had nothing
to hide and were trying to help the men as much as they could. 
        Powell was called as a trial witness over two years after these events. 
He had moved from the community but still saw the men “every now and then”
on the streets. He denied being afraid of the men, stated that the events of
October 2001 did not influence his testimony, and claimed that he did not
know Moore’s family or friends and had no bias towards them. 
        Based on this evidence, the trial court reasonably could have determined
that appellant failed to demonstrate a nexus between Powell’s trial testimony
and his potential motive to testify in favor of the State. The intimidation
exerted by Moore’s “homeboys” was related to their efforts to find Moore and
the person responsible for his disappearance—and the whereabouts of Hughes,
in particular. There is no evidence that, in the intervening two years between
Moore’s death and appellant’s trial, the men had contacted Powell or attempted
to persuade him to testify against appellant.
        Further, Powell did not witness the murder, nor did he testify that
appellant murdered Moore or had anything to do with the murder. His
testimony regarding appellant was limited to two circumstantial facts—that he
observed appellant huddled in conversation with Hughes the night before
Moore’s murder and noticed that appellant was armed.
        For all of these reasons, we hold that the trial court did not abuse its
discretion [14] by limiting appellant’s questioning of Powell or violate appellant’s
constitutional rights. Consequently, we overrule appellant’s third and fourth
points.
        In his sixth point, [15] appellant contends that the trial court improperly
overruled his objection to the court’s instruction regarding reasonable doubt in
the jury charge. Appellant asserts that this ruling violated his state and federal
constitutional rights to due process and due course of law, respectively.
Appellant concedes, however, that we have previously considered and rejected
this argument. [16] Accordingly, we overrule appellant’s sixth point.
        In his seventh point, appellant asserts that the trial court improperly
overruled his objection to the jury charge on the law of parties because the
evidence does not support a parties charge and could have resulted in a
“nonunanimous” verdict based on some jurors’ belief that appellant shot Moore
and other jurors’ belief that Hughes was the shooter. Specifically, appellant
complains of the following portion of the charge’s application paragraph:
If you find from the evidence beyond a reasonable doubt that
on or about the 12th day of October, 2001 in Tarrant County,
Texas, that Bobby Hughes did then and there intentionally cause
the death of an individual, Lamar Moore, by shooting him with a
firearm, and the said Bobby Hughes was then and there in the
course of committing or attempting to commit the offense of
robbery of Lamar Moore, and the Defendant, Don Lee Toluao,
acting with intent to promote or assist the commission of the
offense of capital murder, solicited, encouraged, directed, aided or
attempted to aid Bobby Hughes to commit said capital murder, then
you will find the Defendant guilty of the offense of capital murder,
as charged in the indictment. 

        A person is criminally responsible as a party to an offense if the offense
is committed by his own conduct, by the conduct of another for which he is
criminally responsible, or by both. [17] A person is criminally responsible for an
offense committed by the conduct of another if, acting with intent to promote
or assist the commission of the offense, he solicits, encourages, directs, aids,
or attempts to aid the other person to commit the offense. [18] Each party to an
offense may be charged with commission of the offense. [19]
        The trial court is required to instruct the jury on the law applicable to the
case. [20] When the evidence is sufficient to support both primary and party
theories of liability, the trial court does not err by instructing the jury that it may
convict the defendant either as a principal or as a party, [21] even if there is no
allegation of party liability in the indictment. [22] Further, jury unanimity regarding
the defendant’s liability as a principal or as a party is not required, as long as
the jury unanimously agrees that the defendant committed the same offense. [23]
        In determining whether the accused participated as a party, the court may
look to events occurring before, during, and after the commission of the
offense, and may rely on actions of the defendant that show an understanding
and common design to do the prohibited act. [24] Circumstantial evidence may
be used to prove party status. [25]
        In this case, the record shows as follows:
        Appellant was at a barbeque at 1201 Marion Street the night before
Moore’s murder. He was armed and huddled in conversation with Hughes. 
Warren and Kierian McDowell, who were also present at the barbeque, heard
the two men discussing robbing someone. The next morning, McDowell heard
a gunshot in the garage at 1201 Marion and looked inside to see Moore lying
on the floor, appellant holding a gun, and Hughes taking a “wad” of money
from Moore’s jacket. Appellant threatened to kill McDowell if he did not help
them. Appellant wrapped Moore’s bleeding head in a blanket, and Hughes and
McDowell helped appellant load Moore’s body into Moore’s Suburban.
Appellant, Hughes, and McDowell then disposed of Moore’s body in some
bushes behind a church at the end of Marion Street. 
        The jury could have concluded from this evidence that appellant shot
Moore while robbing or attempting to rob him or that Hughes shot Moore and
then gave the gun to appellant so that Hughes could clean out Moore’s pockets. 
Therefore, the evidence is sufficient to support both primary and party theories
of liability, [26] and the trial court did not err [27] by charging the jury on the law of
parties. [28] We overrule appellant’s seventh point.
        In his eighth point, appellant complains that the trial court improperly
overruled his hearsay objection to the following portion of Jesuita Warren’s
testimony:
[PROSECUTOR]: Did Frog advise [you] that—that is Frog, Bobby
Hughes—advise that he was meeting Lamar Friday morning to bond
out Trey, Bryant Sheffield?
 
. . . .
[WARREN]: Yes. 
        Appellant contends that the admission of the above hearsay harmed him
because part of the State’s theory of the case was that Hughes talked Moore
into meeting him with money on the morning of the murder under the pretext
of bonding Sheffield out of jail. Appellant asserts that Warren’s testimony
“may have been the piece of the puzzle that tipped the scales in the eyes of the
jurors against Appellant.” The State argues that, even if the trial court
improperly overruled appellant’s hearsay objection, the error was harmless.         The admission of inadmissible hearsay is a nonconstitutional error;
therefore, we are to disregard the error unless it affected appellant's substantial
rights. [29] A substantial right is affected when the error had a substantial and
injurious effect or influence in determining the jury’s verdict. [30] In making this
determination, we review the record as a whole. [31] 
        In this case, the testimony about which appellant complains is relatively
insignificant. It is limited to a single comment that does not mention appellant
and does not, by itself, tend to implicate him in the charged offense. 
Appellant’s defensive theory was that Hughes and McDowell committed the
crime and then drove to Dallas in Moore’s Suburban, where they happened to
see appellant, who had been in Dallas since the day before the murder
occurred. Warren’s testimony is not inconsistent with appellant’s theory; the
testimony only refers to Hughes’s alleged statement about Hughes’s plans.
        Further, other evidence presented at trial, which we have previously
discussed, established that appellant helped to plan the offense and that he
shot Moore. In addition, hotel records and other evidence showed that, on the
day before Moore’s murder, appellant made a reservation at the Budget Inn
Suites in Dallas, where he spent the night following the murder with Hughes
and McDowell. Finally, there is evidence that appellant, Hughes, and McDowell
went shopping with $1300 that Hughes had taken from Moore’s pocket and
that appellant was wearing Moore’s jewelry when he was arrested several
weeks later in California. 
        We conclude that, in the context of the entire case against appellant, the
trial court’s alleged error in admitting Warren’s testimony did not have a
substantial or injurious effect on the jury’s verdict and did not affect appellant’s
substantial rights. [32] Thus, we disregard the error, if any. [33] We overrule
appellant’s eighth point.
        Having overruled all appellant’s points, we affirm the trial court’s
judgment.
                                                          PER CURIAM

PANEL F:   CAYCE, C.J.; DAUPHINOT and HOLMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 18, 2005
 
 
NOTES
1. See Tex. R. App. P. 47.4.
2. Tex. R. Evid. 404(a)(1)(A). This rule provides:
Evidence of a person’s character or character trait is not admissible
for the purpose of proving action in conformity therewith on a
particular occasion, except:
(1) Character of accused. Evidence of a pertinent character
trait offered:
(A) by an accused in a criminal case . . . [.]
Id.
3. Appellant asserts that both sides agree that Hughes was present when the
murder took place but disagree as to his role in it. 
4. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).
5. Manning v. State, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). 
6. Id.
7. See U.S. v. Wright, 363 F.3d 237, 247 & n.3 (3rd Cir. 2004) (applying Fed.
R. Evid. 404(a)(1), which is virtually identical to Tex. R. Evid. 404(a)(1)(A)),
petition for cert. filed, ___ U.S.L.W. ___ (July 2, 2004) (No. 04-5173); see also
Fed. R. Evid. 404 advisory comm. notes to 1972 proposed rules (West 2001)
(noting that federal rule 404(a)(1) codified deeply rooted common-law rule that
permitted criminal defendant to introduce pertinent evidence of his good
character); Castaldo v. State, 78 S.W.3d 345, 349 (Tex. Crim. App. 2002)
(stating that Texas rule 404 uses “accused” in same way as its federal
counterpart).
8. Appellant’s reliance on Martin v. State, 823 S.W.2d 726, 729 (Tex.
App.—Waco 1992, pet. ref’d) and Salazar v. State, 805 S.W.2d 538, 541
(Tex. App.—Fort Worth 1991, pet. ref’d) is misplaced because those cases
involved evidence of crimes, wrongs, or bad acts of third parties—which were
not offered in those cases and are not admissible to prove an accused’s
character. See Tex. R. Evid. 404(b); Castaldo, 78 S.W.3d at 349 (“Rule 404(b)
expresses a prohibition against using evidence of acts to prove character, even
when character is at issue under one of the three exceptions in [rule] 404(a).”) 
Appellant does not contend that Hughes’s character is an essential element of
a charge, claim, or defense in this case. See Tex. R. Evid. 405(b).
9. Davis v. Alaska, 415 U.S. 308, 315-17, 94 S. Ct. 1105, 1110-11 (1974).
10. Tex. R. Evid. 613(b).
11. Carpenter v. State, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998); Carroll
v. State, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996).
12. Woods v. State, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004), cert.
denied, 125 S. Ct. 2295 (2005).
13. Moore was murdered on a Friday. 
14. See Manning, 114 S.W.3d at 926; Burden, 55 S.W.3d at 615.
15. Appellant’s fifth point, in which he complains of the trial court’s failure to
appoint him a second defense attorney between the time of his indictment and
the State’s waiver of the death penalty, see Tex. Code Crim. Proc. Ann. art.
26.052(e) (Vernon Supp. 2004-05), is forfeited because he did not raise it
below. See Tex. R. App. P. 33.1(a).
16. See Minor v. State, 91 S.W.3d 824, 829 (Tex. App.—Fort Worth 2002,
pet. ref’d). After appellant’s brief was filed, the court of criminal appeals also
held that the jury instruction of which appellant complains is not an abuse of
discretion. Woods, 152 S.W.3d at 115.
17. Tex. Penal Code Ann. § 7.01(a) (Vernon 2003).
18. Id. § 7.02(a)(2).
19. Id. § 7.01(b).
20. Tex. Code Crim. Proc. Ann. art. 36.14 (Vernon Supp. 2004-05).
21. Ransom v. State, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994), cert.
denied, 519 U.S. 1030 (1996); Hanson v. State, 55 S.W.3d 681, 694 (Tex.
App.—Austin 2001, pet. ref’d) (citing Goff v. State, 598 S.W.2d 624, 629
(Tex. Crim. App. 1979)).
22. Montoya v. State, 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), cert.
denied, 502 U.S. 961 (1991).
23. See Sanchez v. State, 813 S.W.2d 610, 612 (Tex. App.—Houston [1st
Dist.] 1991, pet. ref’d) (rejecting appellant’s argument that inclusion of parties
charge improperly gave State advantage of obtaining conviction under either
principal or party liability theory); see also Kitchens v. State, 823 S.W.2d 256,
258 (Tex. Crim. App. 1991) (noting that “there is no general requirement that
the jury reach agreement on the preliminary factual issues which underlie the
verdict”); Hanson, 55 S.W.3d at 694 (“[I]f a jury is authorized to convict a
defendant on a finding that he committed a single offense in either of two
different ways, the jury need not unanimously agree as to which method of
commission the defendant actually employed.”).
24. Ransom, 920 S.W.2d at 302.
25. Id.
26. See Ransom, 920 S.W.2d at 302; Sanchez, 813 S.W.2d at 612.
27. See Abdnor v. State, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)
(setting out standard for reviewing alleged charge error). 
28. Savant v. State, 544 S.W.2d 408 (Tex. Crim. App. 1976), on which
appellant relies, is inapposite. The Savant court held that there was no
evidence that the appellant had been acting as anything other than a principal.
See id. at 409.
29. See Tex. R. App. P. 44.2(b); Moon v. State, 44 S.W.3d 589, 594-95 (Tex.
App.—Fort Worth 2001, pet. ref’d).
30. King v. State, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing
Kotteakos v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946));
Coggeshall v. State, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet.
ref’d).
31. See Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).
32. See King, 953 S.W.2d at 271.
33. See Tex. R. App. P. 44.2(b); see also Guidry v. State, 9 S.W.3d 133, 151-52 (Tex. Crim. App. 1999) (holding admission of hearsay harmless when it was
just a small part of comprehensive evidentiary picture), cert. denied, 531 U.S.
837 (2000).